STATE OF NORTH CAROLINA v. AMY RIGGSBEE

No. 8415SC81

(Filed 28 December 1984)

1. **Parent and Child § 2.2— abuse by day care operator—evidence sufficient**

   In a prosecution for felonious child abuse, defendant's motion to dismiss was properly denied when the State introduced evidence that a child was placed in the *sole* care of defendant; that the child had no bone disease or nutritional deficiency and was in good physical condition when left with the defendant; that the child suffered a spiral fracture of his left arm while in the defendant's care; that defendant attempted to explain the injury first by stating that the child had sprained his arm while attempting to push himself up, then that she had not seen the child fall but had simply found him in his crib with his arm twisted behind his back; and that the fracture could not have been caused by the child falling on his arm but had been caused by a twisting force being applied to the arm. G.S. 14-318.4(a)(2).

2. **Parent and Child § 2.2— abuse by day care operator—evidence of other incidents admissible on cross-examination of defendant**

   In a prosecution for felonious child abuse, there was no error in the denial of defendant's motion in limine to prohibit the State from cross-examining her about injuries to two other children in her care where defendant's testimony on *voir dire* tended to show acts of misconduct and there was no allegation that the State did not ask the questions in good faith.

**3. Parent and Child § 2.2— abuse by day care operator—defense of accidental injury—evidence of another incident admissible**

In a prosecution for felonious child abuse, there was no error in admitting evidence of a prior striking of another infant by defendant where defendant was charged with a violation of G.S. 14-318.4, which requires that the State prove intentional injury to the child, and defendant's defense was that the injury was accidental. When the issue is whether the act is done intentionally or by accident, evidence of previous acts of child abuse is relevant and competent.

APPEAL by defendant from *Collier, Judge.* Judgment entered 13 October 1983 in Superior Court, ORANGE County. Heard in the Court of Appeals 26 September 1984.

Defendant was convicted upon an indictment proper in form charging her with felonious child abuse. From a judgment imposing a two year suspended sentence, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James A. Wynn, Jr., for defendant appellant.*

JOHNSON, Judge.

The State introduced evidence which tended to show the following: On 6 May 1983, defendant operated and maintained a day care facility in her home for children ranging from infant to five years of age. Andrew Huang, the four month old son of David and Christi Huang, was one of the children in defendant's care. Andrew was a healthy child and appeared to have no physical abnormalities when his mother left him with defendant the morning of 6 May 1983. At approximately 2:00 p.m., Bill Hawks arrived to pick up his daughter who was also in defendant's care. While there, Mr. Hawks observed Andrew crying while lying in his crib on his stomach with his arm caught behind his back like an "armlock." No one was holding Andrew's arm. At 5:00 p.m., Mrs. Huang arrived to pick Andrew up. Defendant informed Mrs. Huang that she had just attempted to call her at work to alert her that Andrew appeared to have sprained his arm when he tried to push himself up and fell while in his playpen. Mrs. Huang examined Andrew's left arm which appeared paralyzed. She immediately took him to Dr. Charles Sheaffer, Andrew's pediatrician since birth.

Dr. Sheaffer, an expert in pediatrics, testified that upon examining Andrew on the date in question, he diagnosed a fracture in the mid-shaft of Andrew's left arm; that Andrew had no history of bone disease or nutritional deficiency, either of which would render the occurrence of a fracture more likely. Dr. Sheaffer further testified that although Andrew could push himself up, he was unable to crawl or pull himself up, and in his opinion Andrew could not have caused the injury by pushing himself up on his hands and falling over in his crib.

Dr. Daniel Murphey, an expert in the field of orthopedic surgery, examined Andrew upon referral of Dr. Sheaffer. X-rays revealed a spiral fracture of the humerus of Andrew's left arm. It was Dr. Murphey's opinion that the injury was caused by "a type of force that is not seen from a pull but more of a twisting or torsional injury on the bone."

Dr. Walter Greene, an expert in the field of pediatric orthopedics, and Dr. Godfrey Gaisie, an expert in the field of pediatric radiology, also testified that the x-rays revealed a spiral fracture which Dr. Greene described as a fracture caused by twisting force.

Dr. William Drobnes, an expert in the field of radiology, performed a skeletal survey of Andrew and diagnosed the spiral fracture, which in his opinion could not have been caused by Andrew pushing himself up and falling over his hands.

Bobbi Littlefield, a Protective Services Social Worker at Orange County Department of Social Services, testified that she investigated Andrew's injury; that defendant told her Andrew was "fussing" while she was changing some other children around 5:00 p.m. on May 6, 1983, and that she (defendant) went over to Andrew's crib and saw that "his arm was twisted in a funny way behind him"; that defendant also told her that she had not seen Andrew fall, but that she assumed that he had been rocking and rolled over and twisted his arm. Marty Hawks testified that on 9 May 1983, defendant told her that Andrew was in his playpen on "all fours, and he was rocking back and forth, and he lost his balance and fell, and his arm got stuck underneath him." Over defendant's objection, another State witness was allowed to testify regarding a prior act of child abuse.

Defendant did not testify in her own behalf but presented several character witnesses.

Defendant contends the trial court erred in its denial of defendant's motion to dismiss; in its denial of defendant's motion in limine and in the admission of evidence of a prior act of child abuse.

Defendant was indicted and convicted of child abuse under G.S. 14-318.4(a)(2) which states in pertinent parts that:

Any parent of a child less than 16 years of age, or any other person providing care to or supervision of the child who intentionally inflicts any serious physical injury which results in [b]one fracture is guilty of a . . . felony.

The essential elements of the crime of which defendant was convicted are as follows:

(1) That defendant was providing care of Andrew Huang.

(2) That Andrew Huang was less than 16 years of age.

(3) That defendant intentionally twisted Andrew's arm.

(4) That the twisting of Andrew's arm by defendant proximately caused a serious injury to Andrew.

(5) That the injury resulted in the fracture of a bone in Andrew's arm.

In ruling on a motion to dismiss, the trial court is required to consider the evidence in the light most favorable to the State and give to the State the benefit of every reasonable inference to be drawn therefrom. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). When the motion raises the question of the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is guilty. *State v. Mapp*, 45 N.C. App. 574, 264 S.E. 2d 348 (1980).

[1] Defendant contends that the court should have allowed her motion to dismiss in that the State failed to present sufficient evidence that defendant intentionally twisted Andrew's arm; or if

so, that such twisting was a proximate cause of the bone fracture Andrew suffered. We disagree.

Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. In determining the presence or absence of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged. *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974); *State v. Norman*, 14 N.C. App. 394, 188 S.E. 2d 667 (1972).

Based upon all the facts before the court in the case *sub judice* there is sufficient evidence reasonably to infer defendant's guilt. The State introduced evidence which showed that on 6 May 1983, Andrew, four months of age, was placed in the *sole* care of defendant. Andrew had no bone disease or nutritional deficiency and was in good physical condition when left with defendant. While Andrew was in defendant's *sole* care, he suffered a spiral fracture of his left arm. Defendant attempted to explain Andrew's injury by first stating that Andrew sprained his arm when he fell on it while attempting to push himself up. Several days later, defendant stated that she did not see Andrew fall on his arm, but simply found him in his crib with his arm twisted behind his back. Doctors Sheaffer, Murphey and Drobnes testified that the fracture could not have been caused by Andrew falling on his arm while attempting to push or pull himself up. Doctors Murphey and Greene testified that the fracture was caused by a twisting force being applied to Andrew's arm. We find that from this evidence the jury could reasonably infer that Andrew's injury was non-accidental and that defendant, who had *sole* care of Andrew at the time of injury, intentionally twisted Andrew's arm, thereby proximately causing the fracture. When taken in the light most favorable to the State, the evidence is sufficient to withstand the motion to dismiss. (Compare *State v. Mapp, supra*.)

[2] Defendant contends the court erred in denying defendant's motion in limine to prohibit the State from cross-examining her about injuries two other children sustained while in defendant's care. The trial judge denied defendant's motion and thus defendant elected to testify only on *voir dire* to preserve her testimony for appellate review.

On *voir dire* cross-examination, the State asked defendant if she had inflicted any bruises on Andrew Martin, a four month old child, left in her care and whether she failed to obtain medical care for Aspen Reams who had fallen from a crib while in defendant's care and who was later diagnosed as having a concussion and bruises to the back of her neck. Defendant argues that the evidence was inadmissible because it does not show acts of misconduct or that defendant was ever charged or prosecuted for any crime concerning the injuries to Andrew Martin or Aspen Reams.

It is well established that where a defendant in a criminal case testifies in his own behalf, specific acts of misconduct may be brought out on cross-examination to impeach his testimony provided the questions are based on information and are asked in good faith. Such cross-examination for the purpose of impeachment, however, is not limited to convictions of crimes but may also include any act of the defendant which tends to impeach his character. *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972); 1 Brandis on N.C. Evidence, sec. 111, p. 406. In the case *sub judice*, there is no allegation or showing that the State did not ask the questions in good faith. Also, the evidence does tend to show acts of misconduct. Consequently, the examination of defendant about these acts was within the scope of permissible impeachment and the trial judge properly denied defendant's motion in limine.

[3] By her final assignment of error, defendant contends the court erred in failing to exclude evidence of a prior striking of another infant by defendant.

Over defendant's objection, a State's witness was allowed to testify as follows: that on 8 February 1983, when she carried her child to defendant's day care, she heard defendant scream at another child, "Matthew, I can't stand this today; I'm not in the mood for this. If you don't stop screaming, I'm going to beat the shit out of you." The witness also testified that defendant then commenced to repeatedly spank Matthew who was seven months old. The witness testified further that when she confronted defendant, defendant denied striking Matthew, but later stated that she had no choice because he tried to bite her.

Defendant was charged with felonious child abuse in violation of G.S. 14-318.4, which requires that the State prove an intentional injury to the child. Defendant's defense was that the injury

was accidental. This Court has held that when the issue is whether an act was done intentionally or by accident, evidence of previous acts of child abuse is relevant and competent to show that the injuries complained of were the result of an intentional act and not of an accidental fall. *State v. Smith,* 61 N.C. App. 52, 300 S.E. 2d 403 (1983). Therefore, the evidence was properly admitted. In the trial of defendant's case we find

No error.

Chief Judge VAUGHN and Judge WHICHARD concur.