STATE OF NORTH CAROLINA v. JOHN ARDELL McKENZIE

No. COA95-370

(Filed 19 March 1996)

**1. Searches and Seizures § 100 (NCI4th)— search warrant— suggestive identification—other information in affidavit— probable cause**

Although a search warrant was based in part on a rape victim's identification of defendant which was found by the trial court to be impermissibly suggestive, other information in the affidavit provided probable cause for issuance of the search warrant, and clothing, hair and blood samples seized from defendant pursuant to the warrant were properly admitted into evidence, where the affidavit stated that the attacker entered the victim's apartment through an opening in the ceiling from the attic; only defendant's apartment had trap door access to the attic; items belonging to the owner of the apartment in which the rape occurred were found in defendant's pockets; the victim described her attacker as carrying an electrical cord; and a video cassette player belonging to the apartment owner and an electric razor with the cord cut off were found in defendant's apartment.

**Am Jur 2d, Searches and Seizures §§ 110, 115, 117-119.**

**Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.**

**Disputation of truth of matters stated in affidavit in support of search warrant—modern cases. 24 ALR4th 1266.**

**State constitutional requirements as to exclusion of evidence unlawfully seized—post-Leon cases. 19 ALR5th 470.**

**2. Evidence and Witnesses §§ 1432, 1958 (NCI4th)— rape kit—emergency room record—admissibility**

The trial court did not err by allowing a rape kit and emergency room record to be published to the jury since they were relevant to corroborate the victim's testimony, and since such evidence showed trauma to the victim's vaginal area tending to establish penetration, an essential element of the offense of rape.

**Am Jur 2d, Rape § 63; Sodomy § 76.**

What constitutes penetration in prosecution for rape or statutory rape. 76 ALR3d 163.

Modern status of rule regarding necessity for corroboration of victim's testimony in prosecution for sexual offense. 31 ALR4th 120.

3. Evidence and Witnesses § 2211 (NCI4th)— DNA evidence— admissibility

The trial court did not err in admitting DNA evidence which indicated that the samples of semen taken from the victim matched the samples of body fluid taken from defendant, since the expert witness's training and experience provided a proper basis on which to accept this scientific evidence; however, even if it were error to admit the DNA evidence, defendant could not show that the admission of such testimony constituted "plain error," as the testimony from the expert witness corroborated the overwhelming evidence of defendant's guilt.

Am Jur 2d, Rape § 61; Trial § 341.

Admissibility, in proseuciton for sex-related offense, of results of tests on semen or seminal fluids. 75 ALR4th 897.

Admissibility of DNA identification evidence. 84 ALR4th 313.

4. Kidnapping § 16 (NCI4th)— second-degree kidnapping asportation not part of rape—sufficiency of evidence

The evidence was sufficient to support defendant's conviction of second-degree kidnapping where it tended to show that the victim was in the hallway of an apartment when she first discovered defendant who immediately grabbed her, carried her to the bedroom, bound her hands, and covered her head with a pillowcase; when asked if he was going to rape her, defendant replied "no"; thereafter the victim heard defendant shut the blinds, open the cabinets, and rummage through the apartment before he returned to the bedroom; and it was apparent then that the asportation of the victim from the hallway to the bedroom and her confinement prior to the rape was an effort on the part of defendant to conceal his identity and facilitate the commission of the independent acts of larceny and robbery.

Am Jur 2d, Robbery § 6; Trial § 115.

**Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.**

5. **Criminal Law § 1079. (NCI4th)— aggravating factor outweighing mitigating factor—maximum sentence imposed—error**

Where the trial court properly found as a statutory aggravating factor that the defendant had a prior criminal record and as a nonstatutory mitigating factor that the prior convictions did not consist of any crime of violence, it was within the discretion of the trial court to conclude that the aggravating factor outweighed the mitigating factor and to impose the maximum sentence allowed by statute for each offense.

**Am Jur 2d, Trial §§ 841, 1760.**

6. **Criminal Law § 1054 (NCI4th)— continuance of sentencing hearing—no basis argued—denial proper**

The trial court did not abuse its discretion in denying defendant's request for an overnight continuance of his sentencing hearing where defendant did not offer any basis for the continuance. N.C.G.S. § 15A-1334(a).

**Am Jur 2d, New Trial § 337**

Appeal by defendant from judgments entered 6 September 1994 by Judge William C. Gore, Jr. in Columbus County Superior Court. Heard in the Court of Appeals 22 January 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General John J. Aldridge, III, for the State.*

*Lee & Lee, by Junius B. Lee, III, for defendant-appellant.*

WALKER, Judge.

John McKenzie (defendant) was convicted of second degree kidnapping, felonious breaking or entering, felonious larceny, second degree rape, and common law robbery and was sentenced to a total of 100 years in prison. On appeal, defendant challenges the following: (1) the admission of physical evidence seized pursuant to a search warrant, (2) the publication of the rape kit and emergency room record, (3) the admission of evidence regarding the DNA profile analysis, (4) the denial of defendant's motion for directed verdict, (5)

the refusal to dismiss the charge of second degree kidnapping, (6) the sentence imposed and (7) the denial of defendant's motion for a delay in the sentencing hearing. We find that defendant received a fair trial free from prejudicial error.

At trial the State's evidence tended to show that: On 26 October 1993, Shirley Boring lived in apartment 1007-D, Kent Place Apartments in Whiteville. The defendant lived in apartment 1007-H. Her niece, the victim, was in Ms. Boring's apartment fixing lunch when she thought she heard a noise down the hall. As the victim turned to go into the living room, she saw a black man wearing a red jacket, later identified as the defendant, with a cord in his hands. Defendant immediately turned the victim around, picked her up, took her to the bedroom, placed her face down on the bed and told her to "shut the f—— up." Then he tied the victim's hands together and placed a pillowcase over her head. The victim asked defendant if he was going to rape or kill her, to which he responded, "no."

Defendant then left the bedroom, turned off the television, shut the blinds, and rummaged through the cabinets. Later he re-entered the bedroom and began unbuckling his pants. The victim testified that defendant pulled off her clothing and raped her. After the defendant left the apartment, the victim went to the emergency room where she was treated and released.

Approximately fifteen minutes after the reported rape, Detectives Cutchin and George of the Whiteville Police Department observed a black male wearing a red jacket in the complex outside the building where the crimes occurred. Detectives asked the defendant to accompany them to the police department for a photograph. Defendant had in his pockets several gold chains and two watches belonging to Ms. Boring that he allegedly found on his kitchen counter that morning. He also had in his possession a one and a five dollar bill. The victim had reported that a ten, a five, and a one dollar bill were missing from her purse. A ten dollar bill was later found near the foot of the victim's bed.

After searching defendant's apartment, the officers discovered insulation and sheetrock torn away from an opening in the ceiling which provided access to Ms. Boring's apartment through a big hole kicked in her ceiling. A VCR that the victim identified as being stolen on the day of the rape was found under defendant's sink. An electric razor with its cord cut off was found in defendant's apartment.

At trial, Agent Mike Budzynski of the State Bureau of Investigation (SBI) introduced DNA evidence which indicated that certain samples of bodily fluids taken from the victim's body matched the DNA of the defendant. Agent Budzynski opined that the probability that the samples could have come from someone other than defendant was approximately one in 5.5 billion.

The defendant then presented evidence. David Lee Rose testified that he saw the defendant downtown at the shopping center wearing a red jacket and gold pants. The defendant's father also testified that defendant owned the red jacket. Finally, defendant testified and denied all charges against him. He stated that he found the necklaces and watches on the counter of his apartment and that someone must have left them there when the locks on his apartment were being changed.

I.

[1] By way of his first assignment of error, defendant argues that the trial court improperly admitted into evidence clothing, hair, and blood samples seized from the defendant pursuant to an invalid search warrant issued on 26 October 1993. The warrant was based in part on a sworn statement by the investigating officer that the victim identified defendant as her attacker. Later, the identification was suppressed upon a finding by the trial judge that the identification procedure was impermissibly suggestive. Defendant contends that the physical evidence seized pursuant to the invalid warrant also should have been suppressed. Specifically, defendant argues that the State did not establish the admissibility of such evidence pursuant to the inevitable discovery exception to the exclusionary rule.

A court's findings concerning the admissibility of evidence in a motion to suppress are binding on appeal when supported by competent evidence. *State v. Mahaley*, 332 N.C. 583, 592-93, 423 S.E.2d 58, 64 (1992), *cert. denied*, —— U.S. ——, 130 L.Ed.2d 549 (1995). Conclusions of law, however, may be reviewed on appeal. *State v. McKoy*, 323 N.C. 1, 18, 372 S.E.2d 12, 21 (1988), *vacated on other grounds*, 494 U.S. 433, 108 L.Ed.2d 369 (1990). Our Supreme Court has held that only conclusions of law which are "required by the findings" are binding on appeal. *Mahaley*, 332 N.C. at 593, 423 S.E.2d at 64.

Here, the probable cause affidavit included the following pertinent information: Victim described the attacker as a black male who

was carrying an electrical cord. The attacker entered victim's apartment through an opening in the ceiling which led to the building's attic. The defendant's apartment is the only apartment which had a trap door access to the attic. Found in the defendant's pockets were various items belonging to the owner of the apartment where the rape occurred including: several gold chains, two watches, a five dollar bill, and a one dollar bill. A video cassette player belonging to the apartment owner and an electric razor with its cord cut off were discovered in defendant's apartment. Based on this information, the judge concluded that "insufficient facts were alleged in the search warrant to constitute probable cause for the issuance of a search warrant." Upon review of the affidavit of the investigating officer, we find that there was ample evidence to constitute probable cause for the issuance of a search warrant and we reject the court's contrary conclusion. Accordingly, the trial court did not commit reversible error by admitting the physical evidence seized pursuant to this warrant.

## II.

**[2]**  Defendant also contends that the trial court erred by allowing the rape kit and emergency room record to be published to the jury in violation of Rule 403 of the North Carolina Rules of Evidence. Relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (1992). The decision to exclude evidence pursuant to Rule 403 is within the trial judge's discretion. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). On appeal, such decision will not be reversed absent a showing of abuse of discretion. *Id.*

In the present case, the rape kit and emergency room record were relevant to corroborate the victim's testimony. Furthermore, such evidence showed trauma to the victim's vaginal area tending to establish penetration, an essential element of the offense of rape. Accordingly, we find that the trial court did not abuse its discretion by admitting such evidence and allowing it to be published to the jury.

## III.

**[3]**  By his next assignment of error, defendant argues that the trial court improperly admitted DNA evidence which indicated that the samples of semen taken from the victim matched the samples of body fluid taken from the defendant. Defendant contends that the DNA tes-

timony from Agent Budzynski was unreliable and should not have been admitted.

At trial no objection was made to the admission of this testimony and the evidence relating to the DNA match. Ordinarily, a failure to object prior to the introduction of testimony or evidence waives the objection. No prejudice results from the admission of such evidence unless the error affects a substantial right and there is a timely motion to strike. *State v. Jones,* 280 N.C. 322, 340, 185 S.E.2d 858, 869 (1972). However, a party who has failed to object to the admission of evidence at trial may be entitled to a reversal upon a showing that the trial court committed "plain error" by allowing such testimony. Plain error has been defined as:

> (1) a fundamental error, meaning something so basic, so prejudicial, so lacking in its elements that justice cannot be done or (2) a grave error, which must amount to a denial of a fundamental right of the accused; or (3) the error which has resulted in a miscarriage of justice; (4) an error that denies appellant of a fair trial; or (5) an error that seriously affects the fairness, integrity or public reputation of judicial proceedings; or (6) where it can be fairly said that the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Reilly,* 71 N.C. App. 1, 9, 321 S.E.2d 564, 569 (1984), *aff'd,* 313 N.C. 499, 329 S.E.2d 381 (1985) (citations omitted).

This Court recently discussed the admissibility of DNA evidence in *State v. Futrell,* 112 N.C. App. 651, 436 S.E.2d 884 (1993). In *Futrell,* this Court allowed evidence of DNA profile testing and held that it was for the jury to determine the credibility of the experts and the weight of each expert's testimony. *Futrell,* 112 N.C. App. at 664, 436 S.E.2d at 891. The competency of a witness to testify as an expert is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *State v. Bullard,* 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984); *State v. Hill,* 116 N.C. App. 573, 582, 449 S.E.2d 573, 577, *disc. rev. denied,* 338 N.C. 670, 453 S.E.2d 183 (1994).

Our Supreme Court has held that DNA profile testing is "generally admissible." *State v. Pennington,* 327 N.C. 89, 101, 393 S.E.2d 847, 854 (1990). In *Pennington,* the Court ruled that DNA molecules extracted from the defendant's blood and DNA molecules extracted from a stain on a bedspread taken from the crime scene were admissible in the

prosecution for first degree rape, first degree sexual offense, and other crimes. *Id.* The Court focused on "indices of reliability" which include: "the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked 'to sacrifice its independence by accepting [the] scientific hypotheses on faith,' and independent research conducted by the expert." *Pennington,* 327 N.C. at 98, 393 S.E.2d at 853.

Here, the court conducted a voir dire outside the presence of the jury concerning the qualifications of Agent Budzynski and after examination by the prosecutor, defense counsel, and the court, he was allowed to testify as an expert in the field of forensic DNA analysis. Agent Budzynski stated that the forensic DNA analysis was conducted by him under the auspices of the SBI. He also testified regarding the statistical analysis concerning the predicted population frequency of the DNA profiles in this case. The court found that Agent Budzynski completed a particularized SBI training program and had done active DNA casework since 1990. In addition, he attended a number of seminars and working groups with particular reference to DNA analysis and comparisons and had been previously accepted as an expert witness in the courts of this State. Based on Agent Budzynski's training and experience, his testimony, which included visual aids for the jury, provided a proper basis on which to accept this scientific evidence.

Defendant also challenges the reliability of the SBI laboratory which conducted the DNA tests and analysis. The record, however, fails to include any evidence which would bring the reliability of the laboratory or testing procedures into question. Furthermore, defendant has failed to show a lack of opportunity to challenge the reliability of the laboratory and its testing procedures by way of cross-examination and other expert testimony. *See State v. Hill,* 116 N.C. App. 573, 582, 449 S.E.2d 573, 578 (1994). Thus, the evidence was properly admitted by the trial court and it was the jury's duty to determine if the evidence was credible.

Even if it were error to admit the DNA evidence, the defendant cannot show that the admission of such testimony constituted "plain error" since the testimony from Agent Budzynski corroborated the overwhelming evidence of defendant's guilt. This evidence included the testimony of the officers who investigated the reported rape and observed the defendant in the complex outside the building where the

crimes occurred. Furthermore, the attacker entered Ms. Boring's apartment through an opening in the ceiling which led to the building's attic. Defendant's apartment is the only apartment which had a trap door access to the attic. Several gold chains, two watches, a five dollar bill, and a one dollar bill were found in the defendant's pockets. A VCR stolen from Ms. Boring's apartment was also found in the defendant's apartment. Accordingly, this assignment of error is without merit.

IV.

Defendant also assigns as error the trial court's denial of defendant's motion for a directed verdict on all charges. In ruling on a motion for a directed verdict or a motion to dismiss, the trial court must determine whether the State has offered substantial evidence of the defendant's guilt on every essential element of the crime charged. *State v. Corbett and State v. Rhone*, 307 N.C. 169, 182, 297 S.E.2d 553, 562 (1982). Substantial evidence requires that the evidence must be "existing and real, not just seeming and imaginary." *State v. Bates*, 309 N.C. 528, 533, 308 S.E.2d 258, 262 (1983). In considering the evidence, the State is entitled to every reasonable inference that may be drawn therefrom. *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). Contradictions and discrepancies in the evidence are for the jury to decide. *Id.* The test for sufficiency of the evidence is the same regardless of whether the evidence is circumstantial or direct. *Earnhardt*, 307 N.C. at 68, 296 S.E.2d at 653. When a motion for a directed verdict involves circumstantial evidence in a case:

> [T]he court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances shown. If so the jury must then decide whether the facts establish beyond a reasonable doubt that the defendant is actually guilty.

*State v. Triplett*, 316 N.C. 1, 5, 340 S.E.2d 736, 739 (1986) (citation omitted).

**[4]** We first address the sufficiency of the evidence to support the charge of second degree kidnapping. Defendant contends that the trial court erred by failing to grant his motion to dismiss on the grounds that the acts giving rise to this charge were inherent features of other felonies with which defendant was charged. N.C. Gen. Stat. § 14-39 (1995) provides in part that:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or

over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

Defendant argues that there was no confinement or restraint independent from that necessary for the crime of rape. In support of his argument, defendant relies on *State v. Irwin*, which held that a removal which is an integral and inevitable part of some crime other than the kidnapping will not support a separate conviction for kidnapping. *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981).

Although some restraint is inherent in the crime of rape, "the restraint, confinement and asportation of a rape victim may constitute kidnapping if it is a separate, complete act, independent of and apart from the rape." *State v. Silhan*, 297 N.C. 660, 673, 256 S.E.2d 702, 710 (1979). Here, the State's evidence tended to show that the victim was in the hallway when she first discovered the defendant, who immediately grabbed her, carried her to the bedroom, bound her hands, and covered her head with a pillowcase. When asked if he was going to rape her, defendant replied, "no." Thereafter, the victim heard defendant shut the blinds, open the cabinets and rummage through the apartment before he returned to the bedroom. It is apparent then that the asportation of the victim from the hallway to the bedroom and her confinement prior to the rape, was an effort on the part of defendant to conceal his identity and facilitate the commission of the independent acts of larceny and robbery. *See State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 353 (1978) (holding that the restraint of each of the women was separate and apart from the commission upon her of the crime against nature where each woman was restrained for the purpose of facilitating the commission of the felony of the crime against nature upon the other).

Defendant also contends that the trial court erred by denying his motion for a directed verdict on the charges of breaking and entering, larceny, and common law robbery. We have carefully reviewed the evidence in this case and find it sufficient for a jury to draw a reasonable inference of the defendant's guilt on each of these charges.

Defendant also challenges the sufficiency of the evidence to support the conviction of second degree rape. Specifically, defendant argues that the DNA evidence should have been excluded, and that absent this evidence and any identification of defendant by the victim, the rape charge must be dismissed. We disagree.

As previously discussed, DNA profile testing is "generally admissible" and since the evidence was properly admitted, it was the jury's duty to determine if the evidence was credible. In addition, notwithstanding any identification by the victim, there is sufficient evidence to enable a jury to conclude that defendant committed the rape.

V.

[5] By way of his next assignment of error, defendant argues that the trial court's sentence exceeds the lawful and appropriate sentences for these convictions under presumptive sentencing rules. Under the Fair Sentencing Act, the trial judge "must specifically list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence," when imposing a sentence that is greater or lesser than the presumptive term. N.C. Gen. Stat. § 15A-1340.4 (b) (1988). If a prison term in excess of the presumptive is imposed, the trial judge must conclude that the factors in aggravation outweigh the factors in mitigation. *Id.*

Our Supreme Court explained the purpose of the presumptive sentencing rules in *State v. Ahearn*:

> The Fair Sentencing Act was not intended, however, to remove all discretion from our able trial judges. The trial judge should be permitted wide latitude in arriving at the truth as to the existence of aggravating and mitigating circumstances, for it is only he who observes the demeanor of the witnesses and hears the testimony. While he is required to justify a sentence which deviates from a presumptive term to the extent that he must make findings in aggravation and mitigation properly supported by the evidence and in accordance with the Act, a trial judge need not justify the weight he attaches to any factor.

*State v. Ahearn*, 307 N.C. 584, 596-97, 300 S.E.2d 689, 697 (1983). Accordingly, the weighing of the factors in aggravation and mitigation is within the sound discretion of the trial judge. Once the trial judge determines that the aggravating factors outweigh the mitigating factors, the extent by which the sentence exceeds the presumptive sen-

tence is within his or her discretion so long as it does not exceed the maximum punishment set by the legislature. *Ahearn*, 307 N.C. at 598, 300 S.E.2d at 698. Furthermore, the trial judge has the discretion to impose either consecutive or concurrent sentences. *State v. Ysaguire*, 309 N.C. 780, 785, 309 S.E.2d 436, 440 (1983).

In this case, the trial court properly found as a statutory aggravating factor that the defendant had a prior criminal record. As a non-statutory mitigating factor the court found that the prior convictions did not consist of any crime of violence. The court then concluded that the aggravating factors outweighed the mitigating factors and we cannot say that the trial court abused its discretion by giving the defendant the maximum sentence allowed by statute for each offense.

## VI.

[6] Finally, defendant argues that the trial court erred by refusing to grant defendant's request for an overnight delay in the sentencing hearing. N.C. Gen. Stat. § 15A-1334(a) (1988) provides that: "[e]ither the defendant or the State may, upon a showing which the judge determines to be good cause, obtain a continuance of the sentencing hearing." Whether to allow a continuance of the sentencing hearing lies within the discretion of the trial judge. *In re Gallimore*, 59 N.C. App. 338, 340, 296 S.E.2d 509, 511 (1982). Where defendant offers no reason why the hearing should not proceed, this Court has held that the trial court did not abuse its discretion in denying the request for a continuance. *State v. Bush*, 78 N.C. App. 686, 692, 338 S.E.2d 590, 593-94 (1986).

Here, the defendant requested an overnight delay in the sentencing hearing but did not offer a basis for granting the continuance or why a continuance would be helpful. The defense then stated that they did not wish to present any other evidence for sentencing. At this time, defendant could have challenged his prior criminal record but did not do so. In the absence of any showing of "good cause," we cannot find that the trial court abused its discretion in denying defendant's request for a continuance.

After carefully reviewing defendant's assignments of error, we find that the defendant received a fair trial free from prejudicial error.

No error.

Chief Judge ARNOLD and Judge LEWIS concur.