STATE OF NORTH CAROLINA v. ROBYN LYNN NOFFSINGER

No. COA99-166

(Filed 18 April 2000)

**1. Child Abuse and Neglect— felonious child abuse—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss indictments for felonious child abuse where there was substantial evidence from which the jury could find that defendant intentionally perpetrated abuse against the child.

**2. Child Abuse and Neglect— felonious child abuse—aiding and abetting**

The trial court properly submitted felonious child abuse to the jury on a theory of aiding and abetting and did not err by instructing the jury on that theory in light of: defendant's admitted presence during the time when some of the injuries to her child occurred; the special duty she owed her child as a parent; and her failure to intervene or take immediate action following the injuries. A reasonable mind could determine that defendant consented to and contributed to the crime.

**3. Child Abuse and Neglect— sentencing—aggravating factor—joinder with more than one person**

The trial court erred when sentencing defendant for felonious child abuse by finding as an aggravating factor that defendant joined with more than one person in committing the offense; the State conceded in its brief that it failed to meet its burden of proof.

**4. Child Abuse and Neglect— sentencing—mitigating factor—passive participant**

The trial court did not err when sentencing defendant for felonious child abuse by failing to find as a mitigating factor that

STATE v. NOFFSINGER

[137 N.C. App. 418 (2000)]

defendant was a passive participant where defendant offered various explanations for her child's injuries, but the evidence suggested that defendant either perpetrated the abuse or was present when the child was severely and repeatedly injured by another and did not seek medical attention for fear that she would be accused of mistreating the child. Defendant had the burden of proving any mitigating factors by the preponderance of the evidence and failed to present manifestly credible evidence that she was a passive participant.

Appeal by defendant from judgment entered 29 July 1998 by Judge Robert Frank Floyd, Jr. in Superior Court, Brunswick County. Heard in the Court of Appeals 5 January 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Mabel Y. Bullock, for the State.*

*Marjorie S. Canaday for defendant-appellant.*

TIMMONS-GOODSON, Judge.

On 12 April 1997, an emergency medical technician and volunteer ambulance driver, Shannon Parks ("Parks"), answered a call to transport a fifteen month-old child, David Cody Rhinehart ("the child"), to the emergency room of Columbia Brunswick Hospital. The mother of the child, Robyn Lynn Noffsinger ("defendant"), and her boyfriend, David Tripp, Jr. ("Tripp"), transferred the child from their vehicle to the ambulance. At the hospital, Parks observed bruises on the child and believed that he was barely breathing. Parks saw defendant and Tripp outside the emergency room, talking and laughing.

David Crocker ("Crocker"), a detective who was present at the hospital on 12 April 1997, heard defendant express fear that she would be arrested if Tripp left her alone. Around 11:00 p.m., defendant told Tripp that they needed to tell Crocker something, and Tripp told Crocker that the bath water was too hot. Crocker noticed that defendant had small hands and normal length fingernails while Tripp had unusually long fingernails.

Keith Smith ("Smith"), a detective with the Brunswick County Sheriff's Department, arrived at the hospital and observed that the child had bruises and a clouded eye. Smith spoke with defendant, who knew Smith was investigating possible child abuse. Defendant told Smith that she had picked up the child about two weeks earlier

from the home of Frederick and Laura May Proffitt. Defendant noticed that the child had three bruises on his head and was told by the Proffitts that the child had fallen. Acquaintances informed defendant that there may have been drug use in the Proffitt home and that the child had been mistreated there. Defendant also told Smith that after she picked up the child from the Proffitt home, he did not sleep well, cried often, beat his head against the wall, hit himself with a baby bottle, and had a constant fever. Defendant tried to comfort the child by holding him and giving him Oragel, aspirin, and various drinks.

Defendant indicated to Smith that on 11 April 1997, Tripp gave the child a bath and told defendant that the skin on the child's buttocks was coming off. Defendant applied A & D ointment. In defendant's opinion, the burns were a reaction to blueberry Hi-C that the child had drunk. On 12 April 1997, Tripp again bathed the child. According to defendant, she observed through a crack in the door that the child fell in the tub, bumped his head, and slipped several times after Tripp picked him up. After the bath, the child appeared sleepy and Tripp took him upstairs. Soon thereafter, Tripp observed that the child could not breathe and he attempted CPR.

Dr. Richard Alexander ("Alexander"), who was working in the emergency room on 12 April 1997, observed that the child was not breathing, that he had a head fracture, abnormal pupil response, facial bruising, deformity on an arm and a leg, and a burned area in the diaper region, and that the child was having seizures. Alexander placed the child on oxygen, administered medications to support blood pressure and control heart rate, and inserted a catheter. He then made arrangements to transport the child to Duke Medical Center for surgery to relieve pressure on the brain.

According to Alexander, the head injury and bruises were about one or two days old and the injury to the buttocks was not from diaper rash or an allergic reaction. The bruising to the head would have required substantial force by squeezing. Alexander admitted that it was unlikely that a person without medical training would be able to recognize certain of the child's medical problems or know their causes or likely time of occurrence.

Detective Gene Caison ("Caison") accompanied Detective Smith to the Tripp home on 12 April 1997. Defendant had been living in the Tripp home since January of 1997, but the child did not live in the Tripp house until the last Sunday of March 1997. Present in the Tripp

home on 12 April 1997 were David Tripp, Sr., his bedridden wife, James Dodson, Walter, and T.J., defendant's two and one-half year-old son. Caison admitted that David Tripp, Jr. was a caretaker of the child on three dates on which Caison alleged injuries occurred.

Dr. Karen St. Clair ("St. Clair"), a pediatrician at Duke Medical Center, treated the child on 13 April 1997 in the intensive care unit at Duke. St. Clair testified that the child was in critical condition, comatose, and had been placed on life support systems. St. Clair believed that the burns in the buttocks and genital area had been caused by immersion in a hot liquid. She described bruises and lesions and testified that x-rays showed spiral fractures and a buckle fracture in the legs and fractures of the left arm and wrist. St. Clair also described injury to the outer part of the child's eye from some type of trauma as well as blood in the fluid of both eyes. While draining fluid from the brain saved the child's life, the head injury caused brain damage such that only the brain stem remained normal. According to St. Clair, the child would be extremely impaired and would have no thinking processes.

St. Clair testified that the burns occurred within a couple of days of her treating the child. She estimated that the head injury occurred several days before she saw the child. The head injury would have required a forceful impact and could not have been self-inflicted, in St. Clair's opinion. The lower left leg fractures occurred anywhere from minutes before the x-rays were taken to seven days before. Fractures of the left forearm occurred between five days and three weeks before the x-rays. Rib fractures occurred five to seven days before the x-rays. The facial bruising may have occurred a matter of days before she saw it while head bruises were less than seven days old. A split lower lip was two or three days old and puncture marks on the right leg and scratch marks on the face were very recent. The puncture marks appeared to have been made by fingernails. St. Clair testified that the child suffered from battered child syndrome.

When St. Clair interviewed defendant and Tripp after midnight at the hospital, she did not feel that defendant comprehended what she was telling her and defendant occasionally appeared to doze. Defendant and Tripp indicated to St. Clair that the child's injuries had been caused by two baths given by Tripp. Also, they indicated that the child had fallen from a chair onto a vacuum cleaner and that Tripp accidentally hit the child in the eye with his elbow when rising from a settee.

On 1 May 1997 and 9 May 1997, Caison interviewed defendant at the sheriff's department and taped the interview. Caison interviewed Tripp separately. In the interviews, defendant stated that she visited the child while he was living in the Proffitt home from January 1997 until Easter Sunday, 1997. She observed that the child was usually sleepy and stopped walking and talking while there. When she took the child with her on Easter Sunday, she noticed that he had bruises and swelling on his forehead and favored one leg. She believed the leg problem was a result of tight shoes. The child whined and cried frequently during his first week home after Easter, but defendant did not take him to the hospital for fear she would be accused of mistreating him. Defendant denied hurting the child herself and was certain that the Proffitts had caused his injuries.

In his interview, Tripp admitted that he gave the child a bath on 11 April 1997 and that the water may have been too hot, resulting in burns to the child. Defendant was downstairs and heard the child cry out. She asked Tripp if everything was alright and he said yes, but the water was a little too hot. Defendant did not look in the bathroom because the child stopped crying. Later in the evening, defendant saw that the child's skin was peeling off and she applied A & D ointment. Tripp gave the child another bath on the following night and the child fell and hurt himself. When defendant entered the bathroom and asked if the child was alright, Tripp indicated that he was fine. About thirty minutes after the bath, the child began throwing up and acting sleepy.

On 9 May 1997, Caison went to the Tripp home again and arrested defendant and Tripp. According to Caison's description, Tripp was age twenty-four, about six feet tall, with longer than normal fingers and finger nails.

At trial, defense counsel called Tripp to the stand where he asserted the Fifth Amendment and refused to answer any questions. Defense counsel entered into evidence judgments entered on 21 July 1998 sentencing Tripp to active imprisonment for three counts of felony child abuse and suspending sentence against Tripp for a fourth count of felony child abuse. Tripp pled guilty to the four counts of felony child abuse pursuant to an Alford plea.

Following a jury verdict of guilty of three counts of felony child abuse, defendant was sentenced to three consecutive terms of a minimum of thirty-one months with the corresponding maximum of forty-seven months. Defendant appeals.

**STATE v. NOFFSINGER**

[137 N.C. App. 418 (2000)]

At issue on appeal is whether the trial court erred in: (I) denying defendant's motion to dismiss the indictments; (II) instructing the jury on aiding and abetting; (III) finding the aggravating factor that defendant joined with more than one other person in committing the offense; and (IV) failing to find the mitigating factor that defendant was a passive participant.

**[1]** By her first assignment of error, defendant argues that the trial court erred in denying her motion to dismiss the indictments because the prosecution failed to present substantial evidence that defendant was the perpetrator or possessed the requisite intent. We cannot agree.

In ruling on a defendant's motion to dismiss for insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the crime charged and of the defendant's identity as the perpetrator. *State v. Barrett*, 343 N.C. 164, 469 S.E.2d 888, *cert. denied*, 519 U.S. 953, 136 L. Ed. 2d 259 (1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). Substantial evidence is "existing and real, not just seeming and imaginary." *State v. McKenzie*, 122 N.C. App. 37, 45, 468 S.E.2d 817, 824 (1996) (citations omitted). The motion should be allowed if the evidence merely raises a suspicion or conjecture regarding the commission of the crime or the defendant's identity as the perpetrator, even where the suspicion is strong. *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980).

"[A]ll the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom." *Brown*, 310 N.C. at 566, 313 S.E.2d at 587. The evidence may be direct or circumstantial. *Barrett*, 343 N.C. at 172, 469 S.E.2d at 893. Contradictions in the evidence should be resolved by the jury. *Brown*, 310 N.C. at 566, 313 S.E.2d at 587. The jury also determines the weight and credibility of the evidence. *See* N.C. Gen. Stat. § 8C-1, Rule 104(e) (1999).

The felony child abuse statute provides in relevant part:

A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child or who intentionally

commits an assault upon the child which results in any serious physical injury to the child is guilty of a Class E felony.

N.C. Gen. Stat. § 14-318.4(a) (1993). In determining whether the requisite intent is present, the jury may consider "the acts and conduct of the defendant and the general circumstances existing at the time of the offense charged." *State v. Riggsbee*, 72 N.C. App. 167, 171, 323 S.E.2d 502, 505 (1984).

A child who has been diagnosed with "battered child syndrome" has suffered severe and numerous injuries such that it is logical to presume that the injuries were not caused by accidental means or by an isolated contact with a stranger, but instead were caused intentionally by the child's caretaker. *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978); *see also State v. Byrd*, 309 N.C. 132, 305 S.E.2d 724 (1983), *overruled on other grounds by State v. Childress*, 321 N.C. 226, 362 S.E.2d 263 (1987). When a child is diagnosed with battered child syndrome, a permissible inference arises that the child's caretakers intentionally inflicted his injuries. *Byrd*, 309 N.C. 132, 305 S.E.2d 724.

In the present case, Dr. St. Clair diagnosed the child with battered child syndrome. According to Dr. St. Clair, the head injury was the result of great force and could not have been caused by accident. Furthermore, Dr. Alexander testified that the bruising to the head would have required substantial force by squeezing. The child suffered numerous, severe injuries which were inflicted on various occasions, including burns, head trauma, fractures to the leg, arm and ribs, facial bruising, and puncture marks. Therefore, it is logical to presume that the child's injuries were not accidental and that they were caused by his caretaker.

According to the testimony of Doctors St. Clair and Alexander, the majority of the child's injuries were inflicted in the two weeks prior to his admission to the hospital on 12 April 1997. Numerous injuries, such as the head injury, bruises, puncture wounds, and burns took place one to three days before the child was admitted to the hospital.

Defendant stated that the child was mistreated while staying in the home of Frederick and Laura May Proffitt and had already sustained injuries when she retrieved him the last Sunday in March of 1997. However, the child had stayed at the Proffitt home more than two weeks before his admission to the hospital. Thus, the evidence

does not support defendant's assertion that the injuries were inflicted at the Proffitt residence.

Defendant and Tripp both had care of the child in the two weeks prior to his admission. The occupants of the Tripp family home also had continuing opportunity to inflict the injuries in that defendant, Tripp, and the child were living in the Tripp home during the two weeks in issue. Defendant stated in an interview which was presented to the jury by video and redacted transcript that no member of the Tripp household abused the child. She further stated that Tripp had not injured the child. "[Tripp's] good with my kids. And ain't nobody going to tell me no different."

We find substantial evidence from which the jury could find that defendant intentionally perpetrated the abuse against the child. Defendant's statements that the child suffered injuries in the Proffitt home are in conflict with the medical testimony and must be resolved by the jury. Furthermore, defendant's statements that the child suffered a series of accidents such as falling onto a vacuum cleaner and that he beat his own head against the wall contradict medical testimony that the injuries could not have been self-inflicted. As defendant's conduct is relevant evidence of intent, we note that according to her own statement, defendant did not take the child to the doctor earlier for fear that she would be accused of mistreating him, even while his injuries and deformities were glaringly apparent. When the child was finally admitted to the hospital in critical condition, the ambulance driver observed defendant laughing and talking with Tripp outside of the emergency room. Defendant appeared to doze as Dr. St. Clair informed defendant and Tripp of the child's condition. In light of the inference that the child's injuries were intentionally inflicted by a caretaker and in light of defendant's statements which exonerate each member of the Tripp household, relevant evidence exists which, when taken in the light most favorable to the State, adequately supports the conclusion that defendant intentionally inflicted the injuries on the child.

[2] Moreover, while the verdict sheets do not indicate on which theory the jury relied, the jury may have found defendant guilty on grounds that she aided and abetted Tripp in committing felony child abuse. A person who aids or abets another in the commission of a crime is equally guilty with that other person as principal. *State v. Owens*, 75 N.C. App. 513, 331 S.E.2d 311, *disc. review denied*, 314 N.C. 546, 335 S.E.2d 318 (1985).

**STATE v. NOFFSINGER**

[137 N.C. App. 418 (2000)]

As a general rule of American jurisprudence, criminal liability is not imposed for failure to rescue another person from harm. *State v. Walden,* 306 N.C. 466, 474-75, 293 S.E.2d 780, 786 (1982). However, a parent owes a special duty to her child which has long been recognized by statute and by the common law. *Id.* at 475, 293 S.E.2d at 786. As such, a parent has a duty to take affirmative action to protect her child and may be held criminally liable if she is present when someone harms her child and she does not take reasonable steps to prevent it. *Id.* "[W]e hold that the failure of a parent who is present to take all steps reasonably possible to protect the parent's child from an attack by another person constitutes an act of omission by the parent showing the parent's consent and contribution to the crime being committed." *Id.* at 476, 293 S.E.2d at 787.

In the present case, substantial evidence exists that Tripp harmed the child in that he pled guilty pursuant to an Alford plea to four counts of felony child abuse arising out of these facts. According to her own statements, defendant was present when some of the child's injuries occurred. For example, in her taped interview, defendant indicated that she was present when the child inflicted injuries on himself by beating his head against the wall and hitting himself with his baby bottle:

> Lt. Crocker: Yes. How many times did you see him do this? Beat his—
>
> [Defendant]: Beat his head?
>
> Lt. Crocker: Yeah.
>
> [Defendant]: Quite a few.

Later in the interview, when Lieutenant Crocker remarked that the child's injuries could not have been sustained by the child beating his own head, defendant responded, "I'm just saying what I saw." Defendant also stated that she was present when Tripp accidentally hit the child in the face with his elbow:

> [Defendant]: . . . The baby—When [Tripp] went to start to get up [Tripp's] elbow had collided with the baby's eye. And the baby didn't cry or nothing, you know.
>
> Lt. Crocker: But you saw this?
>
> [Defendant]: Yes, I saw that with—

Lt. Crocker: Who else was in the room?

[Defendant]: —my own two eyes.

Defendant also indicated that she was present when the child injured himself by falling from a chair onto a vacuum cleaner.

Defendant owed the child a special duty in that she was his mother. By her own statements, defendant was present when the child sustained injuries, but she did not seek medical attention for the child until his condition was critical even while his injuries were visible to the naked eye. As stated above, we may infer that the child's injuries were not accidental based on his diagnosis as a battered child. We conclude that substantial evidence exists that defendant did not take affirmative steps to protect her child from attack by another person. As such, a reasonable mind could determine that defendant consented and contributed to the crime. Therefore, a jury could have found defendant guilty of felony child abuse beyond a reasonable doubt on a theory of aiding and abetting and the trial court properly submitted the issue to the jury.

By her second assignment of error, defendant argues that the trial court erred in instructing the jury on aiding and abetting in that the instruction was not supported by the evidence. We cannot agree.

"Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). In the present case, on two occasions, the trial court instructed the jury on aiding and abetting as follows:

A person may be also guilty of felonious child abuse, although she personally does not do any of the acts necessary to constitute that crime. A person who aids and abets another to commit a crime is guilty of that crime. You must clearly understand that if she does aid and abet, she is guilty of the crime just as if she had personally done all the acts necessary to constitute that crime. Now, I charge that for you to find the defendant guilty of felonious child abuse because of aiding and abetting, the State must prove three things beyond a reasonable doubt. First, that the crime was committed by some other person. I have previously instructed you on the elements of felonious child abuse. Second, that the defendant knowingly encouraged or aided the other person to commit that crime. Third, that the defendant's actions or statements caused or contributed to the commission of the crime by that other person. So, I charge that if you find from the evi-

dence beyond a reasonable doubt that on or about the alleged dates some other persons other than the defendant committed felonious child abuse and that the defendant knowingly encouraged or aided the other person to commit the crimes and that in so doing the defendant's actions or statements caused or contributed to the commission of the crime by the other person, it would be your duty to return a verdict of guilty of felonious child abuse. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

As stated above, we believe that substantial evidence exists from which a jury could find defendant guilty of felony child abuse under a theory of aiding and abetting. In light of defendant's admitted presence during the time period when some of the injuries occurred, her special duty as a parent, and her failure to intervene or take immediate action following the injuries, defendant can be said to have encouraged and contributed to the commission of the abuse. As such, the trial court did not err by instructing the jury on aiding and abetting.

**[3]** By her third assignment of error, defendant argues that the trial court erred in finding as an aggravating factor that defendant joined with more than one other person in committing the offense in that the State failed to prove the factor by a preponderance of the evidence. We agree.

The State bears the burden of proving by a preponderance of the evidence that an aggravating factor exists. N.C. Gen. Stat. § 15A-1340.16(a) (1999). In the present case, the trial court found as a statutory aggravating factor that "[t]he defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy." The State concedes in its brief that the State failed to meet its burden to prove the aggravating factor. As such, we hold that the trial court erred in finding as an aggravating factor that defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy. Therefore, defendant is entitled to a new sentencing hearing.

**[4]** By her fourth assignment of error, defendant argues that the trial court erred in failing to find the mitigating factor that defendant was a passive participant when the evidence in support of the factor was uncontradicted and substantial. We cannot agree.

The defendant bears the burden of proving any mitigating factors by the preponderance of the evidence. *State v. Canty*, 321 N.C. 520, 364 S.E.2d 410 (1988). In order to establish that the trial court erred in failing to find a mitigating factor, the defendant must show that the evidence clearly establishes the fact in issue such that no reasonable inferences to the contrary can be drawn. *State v. Jones*, 309 N.C. 214, 306 S.E.2d 451 (1983). The trial court errs in failing to find a mitigating factor where the evidence tending to prove the factor is uncontradicted, substantial, and manifestly credible. *State v. Blackwelder*, 309 N.C. 410, 306 S.E.2d 783 (1983).

In the present case, the evidence suggests that defendant either perpetrated the abuse or was present when her child was severely and repeatedly injured by Tripp and that she did not seek medical attention for her child for fear that she would be accused of mistreating him. Defendant offered various explanations for her child's injuries, stating that the child suffered an allergic reaction to Hi-C, that the child fell on to a vacuum cleaner, and that Tripp accidentally hit the child in the face with his elbow as he arose from a settee. The evidence that defendant was not an active participant in the abuse of her child consisted of her own testimony. However, a reasonable mind could determine that defendant perpetrated the abuse to her child or contributed to the abuse in that she was present when he was injured and she owed him a special duty as his parent. We hold that defendant failed to present substantial, manifestly credible evidence that she was a passive participant in the abuse of her child. As such, the trial court was not required to find as a mitigating factor that defendant was a passive participant.

For the reasons stated herein, we find no error in defendant's trial. However, we find that the trial court erred in finding as an aggravating factor that defendant joined with more than one other person in committing the offense. Therefore, we remand for a new sentencing hearing.

No error; remanded for a new sentencing hearing.

Judges MARTIN and HORTON concur.