STATE OF NORTH CAROLINA v. CHRISTINE MARIE LIBERATO

No. COA02-426

(Filed 18 February 2003)

**Child Abuse and Neglect— felony child abuse—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of felony child abuse inflicting serious injury under N.C.G.S. § 14-318.4(a), because: (1) when an adult has exclusive custody of a child for a period of time during which the child suffers injuries that are neither self-inflicted nor accidental,

there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries; (2) two doctors testified in their expert opinion that the child's injuries were intentionally inflicted and the amount of force required to cause such injuries was greater than that resulting from the child falling off either a mattress or chair which was the explanation given by defendant; and (3) defendant testified that the child was in defendant's sole custody the entire time during which the child's injuries were sustained.

Appeal by defendant from judgment entered 10 October 2001 by Judge Loto G. Caviness in Buncombe County Superior Court. Heard in the Court of Appeals 9 January 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General R. Kirk Randleman, for the State.*   .

*Leslie C. Rawls for defendant-appellant.*

HUNTER, Judge.

Christine Marie Liberato ("defendant") appeals her conviction for felony child abuse of her minor daughter, Ruth Liberato ("Ruth"), born 4 November 1997. We conclude the trial court committed no error.

On 2 October 2000, defendant was indicted by a Buncombe County Grand Jury for felony child abuse inflicting serious injury, a violation of Section 14-318.4(a) of the North Carolina General Statutes. Beginning on 8 October 2001, defendant was tried before a jury in Buncombe County Superior Court. The following evidence was introduced at trial.

The State's evidence tended to show that on 27 August 1999, Detective Connie Robinson ("Detective Robinson") was called to Mission Saint Joseph's Hospital in Asheville, North Carolina, to investigate injuries sustained by Ruth. During questioning, defendant told Detective Robinson that at approximately noon on 26 August 1999, defendant had laid Ruth and her younger brother, Thomas, down on a mattress in the living room for a nap while she went to work on some bills. Defendant eventually fell asleep herself, but was awakened when her boyfriend, Jorge, knocked on the door. Following a short conversation with Jorge, defendant went to the bathroom. In a matter of seconds, Jorge ran into the bathroom carrying Ruth's limp body

and yelling that the child was not breathing. An ambulance was called, and Ruth was taken to the hospital.

Defendant told the detective that she and Jorge had never been abusive to the child. Defendant believed Ruth was injured as a result of accidentally falling off the mattress that was lying on the floor. Finally, defendant told Detective Robinson about additional incidents involving Ruth that may have had some relevance to Ruth's current condition, such as: (1) approximately two weeks before the current incident, Ruth and Thomas were treated by a hospital emergency room for ear infections; (2) approximately a week before the current incident, the children had gotten sick again and defendant had quit her job so that she could take care of them; (3) four or five days before the current incident, Ruth had fallen, but appeared to be unharmed despite vomiting, dizziness, and excessive sleeping; and (4) two or three days before the current incident, Ruth had fallen out of a chair before defendant could catch her, hitting her head, face, and ear on a hardwood floor.

At the hospital, Ruth was seen by Dr. Leon DeJournette, M.D. ("Dr. DeJournette"), who was accepted by the court as an expert witness in the field of pediatrics and pediatric critical care. Dr. DeJournette testified that Ruth had been admitted with a brain injury from a subdural hematoma, a blood clot near her brain. He further stated that Ruth had two such blood clots, as well as a small bruise on her right eyelid and bruises under her chin. In his opinion, Ruth's injuries were intentionally inflicted just before Ruth was admitted to the hospital and were not consistent with falling off either a mattress six to eight inches high or a chair three to four feet high. He believed that it would have taken a vertical fall of close to ten feet high to produce the type of injuries sustained by Ruth. Moreover, Dr. DeJournette testified that the bruises under Ruth's chin were consistent with someone putting their hand under the child's jaw and trying to push Ruth's jaw up.

Dr. Cynthia Brown, M.D. ("Dr. Brown") also attended to Ruth at the hospital and testified during the trial. She was accepted by the court as an expert witness in the fields of pediatrics and child abuse. Dr. Brown's diagnosis of Ruth's injuries was the same as that given by Dr. DeJournette. Dr. Brown testified that the effects of injuries to a child's brain cause that child to become less conscious close to the time of the injury. In her opinion, Dr. Brown did not believe defendant's assessment of how Ruth was injured explained the severity of the child's brain injuries.

STATE v. LIBERATO

[156 N.C. App. 182 (2003)]

At the close of the State's evidence, defendant made a motion to dismiss, which was denied. Thereafter, defendant's mother and one of Ruth's teachers testified that Ruth acted and behaved as a normal, healthy child and not one that was being abused. Also, defendant testified on her own behalf and gave essentially the same testimony given by Detective Robinson. Defendant testified that Jorge told her Ruth had rolled off the mattress. Defendant further testified that Jorge did not have time to hurt Ruth that day because he was only alone with the child for a few seconds while defendant was in the bathroom. Finally, defendant testified that she had sole custody of Ruth during the entire time in which Ruth could have sustained the injuries.

Defendant renewed her motion to dismiss at the close of all the evidence. The motion was denied. Thus, following deliberations, the jury returned a verdict finding defendant guilty of felony child abuse. Defendant appeals.

By defendant's sole assignment of error she argues the trial court erred by denying her motions to dismiss due to insufficiency of the evidence.

In order to survive a motion to dismiss in a criminal action, the trial court must view the evidence in the light most favorable to the State, drawing every reasonable inference in favor of the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The evidence considered must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956). "[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." *State v. Wright*, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981) (citations omitted).

In the present case, defendant was indicted and convicted of child abuse inflicting serious injury in violation of Section 14-318.4(a). This section provides:

A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child or who intentionally

commits an assault upon the child which results in any serious physical injury to the child is guilty of a Class E felony . . . .

N.C. Gen. Stat. § 14-318.4(a) (2001). It is undisputed that defendant is Ruth's mother and that Ruth is under sixteen years of age. Thus, the State was only required to tender substantial evidence that defendant intentionally inflicted serious physical injury upon Ruth. Defendant contends that the State failed to meet this burden due to insufficiency of the evidence. We disagree.

This Court has previously held that:

> Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. In determining the presence or absence of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged.

*State v. Riggsbee*, 72 N.C. App. 167, 171, 323 S.E.2d 502, 505 (1984) (citations omitted). *See also State v. Noffsinger*, 137 N.C. App. 418, 424, 528 S.E.2d 605, 609 (2000). With respect to Section 14-318.4, this Court also held in *Riggsbee* that when an adult has exclusive custody of a child for a period of time during which the child suffers injuries that are neither self-inflicted nor accidental, there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries. *Riggsbee*, 72 N.C. App. at 171, 323 S.E.2d at 505. *See also State v. Perdue*, 320 N.C. 51, 357 S.E.2d 345 (1987).

The evidence before this Court in the case *sub judice* is sufficient to infer defendant's guilt. Doctors DeJournette and Brown both testified that in their expert opinion, Ruth's injuries were intentionally inflicted. They opined that the amount of force required to cause such injuries was greater than that resulting from Ruth falling off either a mattress or a chair, which was the explanation given by defendant. Moreover, defendant testified that (1) Jorge was not alone with Ruth long enough to inflict any injuries on the child, and (2) Ruth was in defendant's sole custody the entire time during which the child's injuries were sustained. This testimony provided sufficient circumstantial evidence by which a jury could infer that defendant intentionally inflicted the injuries upon Ruth, especially when considering the court's holding in *Riggsbee*.

When viewed in the light most favorable to the State, the evidence is sufficient to withstand defendant's motions to dismiss. Thus, we

conclude that the trial court did not err in denying defendant's motions to dismiss due to insufficiency of the evidence.

No error.

Judges McGEE and CALABRIA concur.