STATE OF NORTH CAROLINA v. SAMUEL EARL HILL

No. 9311SC1121

(Filed 18 October 1994)

**1. Criminal Law § 261 (NCI4th)— continuance denied—no error**

The trial court did not err in denying defendant's motion to continue in order to allow defendant's counsel time to prepare for the DNA analytic evidence presented by the State, since the trial court allowed defendant's motion for funds with which to hire an expert in DNA analysis to evaluate the results achieved by the SBI laboratory; the trial court turned the SBI report over to defendant and ordered that defendant's DNA expert have immediate access to all discoverable information; and the trial court also continued the case for eight days to allow defendant adequate time to contact an expert and have him evaluate the DNA testing and report.

**Am Jur 2d, Continuance § 28.**

**2. Searches and Seizures § 57 (NCI4th)— lawful entry to effect arrest—seizure of items in plain view**

Officers lawfully entered defendant's trailer to effect an arrest, and items observed by the officers in plain view in defendant's bedroom were lawfully seized and admissible into evidence, where the officers possessed valid arrest warrants for defendant on rape and kidnapping charges; the officers had reason to suspect that defendant was present in the trailer; and upon entering the trailer the officers informed defendant's brother of their purpose. N.C.G.S. § 15A-401(e)(1).

**Am Jur 2d, Searches and Seizures § 161,**

**Constitutionality of searching premises without warrant as incident to valid arrest—Supreme Court cases. 108 L. Ed. 2d 987.**

**Applicability of "plain view" doctrine and its relation to Fourth Amendment prohibition against unreasonable searches and seizures—Supreme Court cases. 110 L. Ed. 2d 704.**

3. **Evidence and Witnesses § 625 (NCI4th)— admission of items previously suppressed—denial of mistrial—absence of prejudice**

The trial court did not err in denying defendant's motion for mistrial based on the admission into evidence of a pin and photograph previously suppressed by the trial court in pretrial motions on the ground that defendant's opening argument to the jury had reflected the trial court's suppression order where the suppression order was entered without prejudice to the State to show that the two items might be admissible under another theory of law; defendant was thus aware that the State might come forward with a legally acceptable basis for admission of the evidence; the State showed that the items were lawfully seized by an officer who entered defendant's trailer to effect an arrest; and defense counsel admitted that he did not tell the jury during the opening statement that the State would not offer either the pin or the photograph. Even if the admission of these items was error, defendant failed to present evidence of prejudice worthy of a mistrial considering the overwhelming evidence presented against him.

**Am Jur 2d, Evidence §§ 601 et seq., 936 et seq.**

4. **Evidence and Witnesses § 2211 (NCI4th)— witness accepted as expert in molecular genetics**

The trial court in a rape case did not err in accepting an SBI special agent as an expert in the field of molecular genetics where the agent testified that he had a bachelor's degree in biology, a masters degree in forensic sciences, and additional training in molecular genetics; had performed approximately 85 DNA analyses; and had been qualified as an expert in two other states.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

5. **Evidence and Witnesses § 2211 (NCI4th)— DNA testimony—statistical probability of DNA matching—evidence admissible**

The trial court in a rape case did not err in allowing a DNA expert to testify to the statistical probability of another individual having the same DNA profile as defendant where the evidence showed that the expert possessed the requisite skill to form an opinion concerning the statistical probability of the DNA matching, and defendant had adequate opportunity to cross-examine the witness and to produce scientific evidence to impeach the witness at trial.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

Admissibility, in criminal case, of statistical or mathematical evidence offered for purpose of showing probabilities. 36 ALR3d 1194.

6. **Kidnapping and Felonious Restraint § 18 (NCI4th)— rape and kidnapping charged—restraint of kidnapping not inherent part of rape—instruction on both crimes proper**

There was no merit to defendant's contention that the trial court erred by instructing the jury on first-degree rape and second-degree kidnapping because the restraint defendant must have employed in the kidnapping was an inherent part of the crime of first-degree rape, since defendant forced the victim from the sales floor to the store restroom at gunpoint and tied her hands; defendant thus procured the victim's submission and restrained her within the meaning of N.C.G.S. § 14-39 with the purpose of committing rape; and at that point the crime of second-degree kidnapping was complete, irrespective of the fact that defendant went on to commit the crime of first-degree rape.

**Am Jur 2d, Abduction and Kidnapping § 32.**

Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.

7. **Criminal Law § 777 (NCI4th)— no alibi evidence offered— instruction not required**

The trial court did not err in refusing to instruct on the defense of alibi where defendant offered no evidence that he was elsewhere when the crimes charged in the indictment occurred but instead merely challenged the identification of himself as the rapist by the State's witnesses.

**Am Jur 2d, Trial §§ 1261 et seq.**

Appeal by defendant from judgment entered 17 March 1993 by Judge William C. Gore, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 31 August 1994.

*Narron, O'Hale and Whittington, P.A., by John P. O'Hale, for defendant-appellant.*

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

**STATE v. HILL**

[116 N.C. App. 573 (1994)]

WYNN, Judge.

Defendant was indicted for first degree rape and first degree kidnapping. The jury found defendant guilty of first degree rape and second degree kidnapping for which he was sentenced respectively to imprisonment terms of life and thirty years.

The State's evidence tends to show the following: At approximately 4:30 p.m. on 3 January 1992, Mary Doe (pseudonym) was in her country craft store when defendant and a woman entered. Ms. Doe testified that defendant was wearing a light brown/tan jacket, blue jeans and dirty sneakers and his hair was fairly long, stringy and unkempt. Defendant and the woman purchased an "I Love Jesus" button and then left the store. Approximately twenty minutes later, defendant returned alone and purchased a bottle of fabric paint. He then asked Ms. Doe if he could use the restroom in the back of the store. While defendant used the restroom, Ms. Doe remained behind the counter.

After exiting the restroom, defendant walked behind the counter and pulled a gun out of his coat. He put the gun in Ms. Doe's back and told her to keep quiet. After stating that he was going to tie her up and rob her, defendant forced Ms. Doe into the restroom, where he tied her hands behind her back with a telephone cable. During this time, defendant kept the gun at the Ms. Doe's head. Defendant pushed Ms. Doe to the floor and forced her to engage in vaginal intercourse with him. After a few minutes defendant appeared to become frustrated. He told Ms. Doe to perform oral sex on him, but she said she would rather die, and she could not do it because she was a Christian. Defendant replied that he would not have done it if he had known she was a Christian. He then got off of Ms. Doe and made her promise not to report him to the police.

Ms. Doe heard the store bell and loosened her hands and replaced her clothing. Defendant told Ms. Doe to get rid of the customer or he would shoot her. He then gave Ms. Doe her glasses and she walked out of the restroom. As she walked to the front of the store, Ms. Doe saw that the woman who had accompanied defendant on his first visit had returned. After asking Ms. Doe several questions, the woman left the store and defendant came out of the restroom. But, as defendant exited the restroom, the woman reentered the store and asked defendant what he was doing in the restroom. He told her that he was fixing the plumbing and they left the store.

STATE v. HILL

[116 N.C. App. 573 (1994)]

After they left, Ms. Doe drove to the police station and told an officer that she had just been raped. She gave a general description of defendant and the woman to a detective and was then transported to the local hospital where a rape kit was completed. While at the hospital, Ms. Doe gave a more detailed statement to the police, including the fact that defendant had facial hair, a protruding lower tooth, and reeked of cat litter. Ms. Doe described the woman as a white female having auburn hair with very dark roots, a rounded face with no makeup, wearing a pink coat with embroidery on the shoulders, and having the same cat litter odor as defendant. She described defendant's gun as a medium sized semi-automatic. After the hospital visit, Ms. Doe returned to the police department where she identified a photograph of defendant. She told the police officers that she did not consent to having vaginal intercourse with defendant.

Detective Jerry Smith of the Clayton Police Department testified that he took a second, more detailed statement from Ms. Doe after she completed her physical examination. Later, at the police department, he had her look through some photograph albums from which she picked out a photograph of defendant. Defendant was also identified by Ms. Doe's friend who was in the store when defendant and the woman bought the "I Love Jesus" pin.

On 4 January 1992, Detective Smith and a member of the Sheriff's Department obtained defendant's last known address and went to his trailer. After informing defendant's brother of their purpose, the officers walked through the trailer looking for defendant. Upon entering defendant's bedroom the officers saw an "I Love Jesus" pin and a photograph of a white female with red hair. Detective Smith later showed the photograph to Ms. Doe and she identified it as a photograph of the woman who had accompanied defendant; it was later determined that the woman was defendant's wife. There were several cats in the trailer and a strong odor of cat litter. Defendant was arrested on 8 January 1992, at which time he was photographed. The photograph showed a protruding lower tooth.

Special Agent Mark Boodee of the SBI was accepted by the trial court as an expert in the fields of molecular genetics and forensic DNA analysis. He testified to the reliability and accuracy of the analysis undertaken at the SBI laboratory. He then explained the general procedures involved in DNA analysis. Special Agent Boodee testified that the analysis in this case began on 5 November 1992 when he received blood samples from Ms. Doe, her husband and defendant.

Special Agent Boodee then performed the DNA tests and obtained seven autorads. One of the autorads was a quality control check, but the other six produced four visual matches and two inconclusive results. Special Agent Boodee characterized the four matches as an extremely rare event. Finally, Special Agent Boodee testified that the probability of selecting another unrelated individual having the same DNA profile as defendant was approximately 1 in 2.6 million for the North Carolina white population.

Defendant presented no evidence.

## I.

Defendant first assigns error to the trial court's denial of his motion to continue. He contends that a continuance was necessary in order to allow his counsel time to prepare for the DNA analysis evidence presented by the State. Defendant argues that his constitutional rights to: (1) due process; (2) effective assistance of counsel; (3) confront and cross examine his accusers; and (4) fundamental fairness were violated. For the following reasons, we disagree.

[1] We note initially that defendant's failure to cite any authority to support his argument subjects this assignment to be deemed abandoned. *S.J. Graves & Sons & Co. v. State*, 50 N.C. App. 1, 273 S.E.2d 465 (1980), *cert. denied*, 302 N.C. 396, 279 S.E.2d 353 (1981) (defendant's failure to afford the appellate court any citations of authority or portions of the record upon which it relied to support its argument deems his argument abandoned); *See Byrne v. Bordeaux*, 85 N.C. App. 262, 354 S.E.2d 277 (1987) (where plaintiff failed to cite authority in support of an assignment of error, such assignment would be deemed to be abandoned). We exercise our discretion, however, and review this assignment of error. A motion to continue is within the sound discretion of the trial court, and its ruling is not subject to review absent an abuse of discretion. *State v. Weimer*, 300 N.C. 642, 268 S.E.2d 216 (1980); *State v. Winston*, 47 N.C. App. 363, 267 S.E.2d 43 (1980). Even when a motion for a continuance raises a constitutional issue and is denied, the denial is grounds for a new trial only when a defendant shows that the denial was erroneous and also that his case was prejudiced as a result of the error. *State v. Pickard*, 107 N.C. App. 94, 418 S.E.2d 690 (1992); *State v. Bunch*, 106 N.C. App. 128, 415 S.E.2d 375 (1992), *cert. denied*, 332 N.C. 149, 419 S.E.2d 575 (1992). The trial court, in the case *sub judice*, allowed defendant's motion for funds with which to hire an expert in DNA analysis to evaluate the results achieved by the SBI laboratory. The trial court turned

the SBI report over to defendant and ordered that defendant's DNA expert have immediate access to all discoverable information. The trial court also continued the case for eight days to allow defendant adequate time to contact an expert and have him evaluate the DNA testing and report. Based on this evidence, we find that defendant failed to demonstrate error or prejudice. This assignment of error is overruled.

## II.

Defendant next assigns error to the trial court's denial of his motion for mistrial based on the admission into evidence of items previously suppressed by the trial court in pre-trial motions. Defendant argues that the admission of this evidence constitutes substantial and irreparable prejudice. Specifically, defendant argues that the trial court erroneously relied on N.C. Gen. Stat. § 15A-401(e)(1) (1988 & Cum. Supp. 1993) to support its decision to admit the "I Love Jesus" pin and the photograph of defendant's wife. Defendant contends that he was prejudiced by the admission of the evidence because his opening argument to the jury reflected the trial court's earlier suppression order. We disagree.

[2] Defendant made a pre-trial motion to suppress the "I Love Jesus" pin and the photograph of his wife. The trial court allowed defendant's motion on the basis that the officers' search warrant was invalid and that defendant's brother did not have commonality of interest sufficient to permit him to open defendant's bedroom door. The trial court stated, however, that its orders were entered without prejudice to the State to show that the two items might be admissible under another theory of law. Thus, during the State's case in chief, the prosecutor asked for a *voir dire* in order to show why the items were in fact admissible. The trial court granted this request on the basis of its earlier caveat, and further testimony was presented. The trial court determined that when the officers were permitted to enter defendant's trailer by defendant's brother, they possessed valid arrest warrants for defendant on the charges of first degree rape and first degree kidnapping. The record also indicates that the officers had reason to suspect that defendant was present in the trailer and upon entering the trailer the officers informed defendant's brother of their purpose. Accordingly, defendant's bedroom door was lawfully opened, and the two items were thereafter seen in plain view. N.C. Gen. Stat. § 15A-401(e)(1) (1988 & Cum. Supp. 1993) provides that a law enforcement officer may enter private premises to effect an

arrest when: a) the officer has in his possession a warrant or order for the arrest of a person; b) the officer has reasonable cause to believe the person to be arrested is present; and c) the officer has given or made reasonable effort to give notice of his authority and purpose to an occupant thereof. Thus, both the "I Love Jesus" pin and the photograph of defendant's wife were admissible into evidence.

[3] Next, defendant argues that he was prejudiced because his opening argument to the jury reflected the trial court's earlier suppression of the pin and the photograph. We disagree. The pre-trial motion to suppress the "I Love Jesus" pin and the photograph was entered without prejudice to the State to show that the two items might be admissible under another theory of law. Defendant was, therefore, aware that the State might come forward with a legally acceptable basis for admission of the evidence. Furthermore, defense counsel admitted that he did not tell the jury during the opening that the State would not offer either the pin or the photograph. Thus, the admission of the pin and the photograph did not prejudice defendant.

Even if this Court found error in the trial court's admission of the pin and the photograph, defendant has failed to present evidence of prejudice worthy of a mistrial, considering the overwhelming evidence presented against him. In *State v. Bonney*, 329 N.C. 61, 405 S.E.2d 145 (1991), our Supreme Court held that a mistrial should be granted only when improprieties in trial are so serious that they substantially and irreparably prejudice the defendant's case. *See State v. Bailey*, 97 N.C. App. 472, 389 S.E.2d 131 (1990) (trial court's ruling on motion for mistrial not reviewable on appeal absent manifest abuse of discretion). In addition to the "I Love Jesus" pin and the photograph, the State submitted other incriminating evidence which connected defendant to the rape and kidnapping committed on 3 January 1992. This evidence included the physical and photographic identification of defendant by Ms. Doe and her friend, as well as the DNA matches between his blood and Ms. Doe's vaginal swabs and panty cutting, and the statistical calculations made thereon. The trial court, therefore, did not err by denying defendant's motion for a mistrial. Accordingly, this assignment of error is overruled.

III.

[4] Defendant next contends that the trial court erred by accepting Special Agent Boodee as an expert in the field of molecular genetics. We disagree.

STATE v. HILL

[116 N.C. App. 573 (1994)]

Whether a witness is qualified as an expert is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. *State v. Parks*, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989). Special Agent Boodee testified that he received a Bachelors degree in Biology from the University of Virginia, a masters degree in Forensic Sciences from George Washington University, and he received additional training in Molecular Genetics from North Carolina State University. He also stated that he has performed approximately 85 DNA analyses and has been qualified as an expert in both Kansas and Illinois.

We have reviewed Special Agent Boodee's testimony and conclude that he was qualified to inform the jury about molecular genetics. This assignment of error is overruled.

IV.

Defendant next contends that the trial court erred by allowing Special Agent Boodee to conclude that four out of six DNA probes yielded visual matches. We disagree.

Defendant argues that by testifying that a match of four out of the six probes was a rare event, Special Agent Boodee improperly stated his opinion that defendant was the person who committed the rape. N.C. Gen. Stat. § 8C-1, Rule 703 (1992), however, provides that an expert may state an opinion that embraces an ultimate issue to be decided by a trier of fact. Furthermore, in *Liverman v. Bridgett*, 77 N.C. App. 533, 335 S.E.2d 753 (1985), *cert. denied*, 315 N.C. 391, 338 S.E.2d 880 (1986), this Court recognized that Rule 704 allows testimony by an expert on an ultimate issue. See *Welborn v. Roberts*, 83 N.C. App. 340, 349 S.E.2d 886 (1986).

Thus, Special Agent Boodee's testimony regarding the DNA match was properly admitted. This assignment of error is overruled.

V.

[5] Defendant next contends that the trial court erred by allowing Special Agent Boodee to testify to the statistical probability of another individual having the same DNA profile as defendant. Specifically, defendant argues that the database used was too small to accurately conclude that there was only a chance of 1 in 2.6 million that another individual would have the same DNA profile as the defendant. We disagree.

This Court recently discussed the issue of DNA analysis in *State v. Futrell*, 112 N.C. App. 651, 436 S.E.2d 884 (1993). In *Futrell*, this Court allowed evidence of DNA profile testing and held that it was for the jury to determine the credibility of the experts and the weight of the expert's testimony. *Id.* at 667, 436 S.E.2d at 892. The competency of a witness to testify as an expert is within the sound discretion of the trial court. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984).

In *State v. Pennington*, 327 N.C. 89, 393 S.E.2d 847 (1990), our Supreme Court held that DNA profile testing is "generally admissible." In *Pennington*, the Court ruled that DNA molecules extracted from the defendant's blood and DNA molecules extracted from a stain on a bedspread taken from the crime scene were admissible in the prosecution for first degree rape, first degree sexual offense, and other crimes. *Id.* The Court focused on "indices of reliability" which include: "the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked to sacrifice its independence by accepting scientific evidence on faith, and independent research conducted by the expert." *Id.* at 98, 393 S.E 2d at 853. The Court also ruled that admission of DNA evidence is not automatic but is subject to attack. Issues such as relevancy, prejudice, reliability of procedures, reliability of results obtained, and contamination of the sample or chain of custody may be presented. *Id.* at 101, 393 S.E.2d at 854.

Defendant contends that the database was too small to permit use of statistical analysis regarding the probability that the DNA sample could have belonged to someone other than defendant. The trial court testimony, however, shows that Special Agent Boodee possessed the requisite skill to form an opinion concerning the statistical probability of the DNA matching. Furthermore, defendant had adequate opportunity to cross-examine the witness and to produce scientific evidence to impeach the witness at trial. Thus, the evidence was properly admitted by the trial court, and it was the jury's duty to determine if the evidence was credible.

## VI.

Defendant next contends that the trial court erred by allowing Special Agent Boodee to testify that Dr. Bruce Weir determined the 500 samples to be a representative sample upon which the North Carolina population frequency database was developed. We disagree.

Under N.C. Gen. Stat. § 8C-1, Rule 703 (1992), an expert may base an opinion on facts or data perceived before the hearing if it is of a

type reasonably relied upon by experts in the field. Our Supreme Court has held that Rule 703 permits an expert to rely on an out-of-court communication as a basis for an opinion. *State v. Jones*, 322 N.C. 406, 368 S.E.2d 844 (1988); *See State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991). Special Agent Boodee testified in some detail to Dr. Weir's professional background and the results of the statistical testing to which Dr. Weir had subjected the SBI database. Special Agent Boodee was obviously familiar with Dr. Weir's analysis of the SBI database and the results, particularly since Special Agent Boodee used the database himself when making his statistical calculations for this case. Thus, the trial court did not err by allowing Special Agent Boodee to testify about the results of Dr. Weir's study. This assignment of error is overruled.

VII.

**[6]** Defendant next contends that the trial court erred by instructing the jury on first degree rape and second degree kidnapping because the restraint defendant must have employed in the kidnapping was an inherent part of the crime of first degree rape. We disagree.

In *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), our Supreme Court construed the element of restraint in N.C. Gen. Stat. § 14-39 (1993) to connote a restraint separate and apart from that which is inherent in the commission of certain other felonies, such as forcible rape and armed robbery. The Court went on to say that "[t]here is no constitutional barrier to the conviction of a defendant for kidnapping by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352. In *State v. Walker*, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987), this Court stated that "[a]sportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetuated the offense when he first threatened the victim and instead took the victim to a more secluded area to prevent others from witnessing or hindering the rape." Although defendant could have committed the rape in the front of the store, he forced Ms. Doe into the store restroom by threatening her with a gun. Thereafter, he tied her hands behind her back with a telephone cable. He thus procured Ms. Doe's submission and restrained her within the meaning of N.C. Gen. Stat. § 14-39 (1993) with the purpose of committing rape. At that point, the crime of second degree kidnapping was complete, irre-

spective of the fact that defendant went on to commit the crime of first degree rape.

The evidence, in the case *sub judice*, was sufficient to support the convictions of both first degree rape and second degree kidnapping. Thus, this assignment of error is overruled.

## VII.

**[7]** Finally, defendant contends that the trial court erred by refusing to instruct on the defense of alibi. We disagree. Defendant relies on *State v. Hunt*, 283 N.C. 617, 197 S.E.2d 513 (1973), in support of this assignment of error. In *Hunt*, the defendant offered his own testimony and the testimony of other witnesses to support his argument that he was somewhere else when the crimes charged in the indictments were committed. In the case *sub judice*, defendant offers no evidence that he was elsewhere when the rape and kidnapping occurred; he merely challenges the identification of him as the rapist by the State's witnesses. The trial court, therefore, did not err in refusing to give an alibi instruction. This assignment of error is overruled.

No error.

Judges COZORT and McCRODDEN concur.