STATE OF NORTH CAROLINA v. CHARLES EUGENE WATTS

No. COA04-874

(Filed 2 August 2005)

## 1. Evidence— DNA expert testimony—population statistics

The trial court did not commit plain error in a statutory rape
case by denying defendant's objection to a witness's testimony
concerning his opinion about population statistics when he had
been tendered as an expert in forensic DNA analysis, because: (1)
given that the Court of Appeals has found that a population-
statistical analysis is the third step in DNA analysis, our case law
evidences the admissibility of testimony on population statistics
by forensic DNA analysis experts; and (2) defendant cites no
authority in support of his argument.

## 2. Evidence— DNA analysis conducted by absent colleague—right to confrontation

The trial court did not commit plain error in a statutory rape
case by denying defendant's objection to the testimony of a wit-
ness tendered as an expert in forensic DNA analysis about results
of a DNA analysis conducted by an absent colleague, because: (1)
an expert may base his opinion on tests performed by others in
the field; and (2) defendant's right of confrontation was not vio-
lated since he was given an opportunity to cross-examine the
expert on the basis of his opinion.

## 3. Constitutional Law— effective assistance of counsel—failure to stipulate to chain of custody

Defendant did not receive ineffective assistance of counsel in
a statutory rape case by his counsel's failure to stipulate to the
chain of custody of the products of conception in order to avoid
the necessity of introducing them into evidence at trial, because:
(1) there is no reasonable probability that defense counsel's
alleged error affected the outcome of defendant's trial; (2) had
defense counsel stipulated to the chain of custody of the prod-
ucts of conception, testimony regarding the results of the pater-

nity would still have come in; (3) a stipulation to the chain of custody could not have negated the overwhelming evidence of defendant's guilt; and (4) notwithstanding the inflammatory manner in which the products were admitted, were the issue preserved for review and assuming the admission amounted to error, there was no prejudicial error given the overwhelming evidence of defendant's guilt.

### 4. Sentencing— statutory rape—proportionate

The trial court did not err in a statutory rape case by imposing a sentence allegedly grossly disproportionate to the crime, because: (1) our Court of Appeals has previously held that the penalty set by our legislature for statutory rape is not disproportionate to the crime and reflects a rational legislative policy; and (2) defendant has not attempted to explain why this rationale would change under the Eighth Amendment of the United States Constitution.

### 5. Sentencing— aggravating factors—*Blakely* error—offense while on pretrial release

The trial court erred in a statutory rape case by finding the aggravating factor that defendant committed the offense while on pretrial release on another charge and by sentencing defendant within the aggravated range in violation of his Sixth Amendment right to a jury trial, and defendant's conviction is remanded for resentencing, because: (1) other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt; and (2) the aggravating factor in this case was not a prior conviction, the factor was not admitted by defendant, and the facts for this aggravating factor were not presented to a jury and proved beyond a reasonable doubt.

Appeal by Defendant from conviction and sentence entered 13 June 2003 by Judge B. Craig Ellis in Superior Court, Scotland County. Heard in the Court of Appeals 1 March 2005.[1]

1. By order of this Court, the filing of this opinion was delayed pending the outcome of the Supreme Court of North Carolina decisions in *State v. Allen,* 359 N.C. 425, —— S.E.2d ——, —— (1 July 2005) (485PA04) and *State v. Speight,* 359 N.C. 602, —— S.E.2d ——, —— (1 July 2005) (491PA04) on issues arising from the United States Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403 (2004).

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Bruce T. Cunningham, Jr., for the defendant-appellant.*

WYNN, Judge.

In *State v. Futrell*, 112 N.C. App. 651, 659, 436 S.E.2d 884, 888 (1993), this Court reviewed "the process of DNA analysis[]" and found that a population-statistical analysis is the third part of DNA analysis. Here, Defendant argues, *inter alia*, that a witness tendered as an expert in forensic DNA analysis was not qualified to testify on population statistics. Given that our case law evidences the admissibility of testimony on population statistics by (forensic) DNA analysis experts and Defendant presents no authority to support his argument, we uphold the admission of the testimony on population statistics. But, for reasons given in *Allen*, 359 N.C. at ——, —— S.E.2d at ——, and *Speight*, 359 N.C. at ——, —— S.E.2d at ——, we must remand this case for resentencing because the trial court improperly found an aggravating factor and sentenced Defendant in the aggravated range in violation of the Sixth Amendment to the United States Constitution.

Upon the verdict of a jury, Defendant was convicted of raping a thirteen-year-old female ("the minor") and sentenced to 360 to 441 months imprisonment without parole. The record reflects that the minor moved to North Carolina with her father in 2000 after her parents separated. Defendant, Charles Eugene Watts, is related to the minor. The minor began working for Defendant at his garage because her father was sick, his income was low, and the minor needed things for school. At the time, the minor was thirteen years old; Defendant was forty-seven.

At trial, the minor provided the following testimony: Defendant began sexually assaulting her soon after she started working for him. Defendant kissed her, put his fingers into her vagina, and then raped her twice a day every weekday. Before Defendant raped her, the minor had not had sexual intercourse with anyone. Defendant told the minor that he would hurt her and her family if she told anybody.

On 7 September 2000, while driving the minor to school, Defendant grabbed the back of her head, pushed it into his lap, and forced her to perform oral sex on him. Defendant then drove to his garage, where he again raped the minor before taking her to school. She took the bus home from school, showered, and visited a neigh-

bor, Susan Butler. She told Ms. Butler what had been happening. Testimony at trial established that Ms. Butler immediately talked to the minor's father; he, along with the minor and Ms. Butler, went to the police.

Thereafter, the police sent the minor to the hospital, where her underwear and physical samples were taken. A pregnancy test was administered, with a positive result. The treating obstetrician-gynecologist estimated the time of conception to be somewhere between 9 August and 19 August, during which time the minor was allegedly being raped by Defendant. The fetus was not viable, and an evacuation was performed. The products of conception extracted during the evacuation were preserved and picked up by the police.

Defendant consented to giving a blood sample. He contended that he was sterile, denied having any sexual contact with the minor, contended that the minor had a bad reputation, and accused the minor of making sexual advances toward him.

Defendant was arrested and tried for statutory rape of a thirteen-year-old victim at the 10 June 2003 session of Superior Court, Scotland County. During the trial, the physician who performed the evacuation was asked to identify the products of conception, which were "leaking somewhat." The trial court interrupted the examination, asking that the products be put in a cooler and a lid be placed on the cooler. The trial court recessed for five minutes in order for the bailiff to get "spray" and the trial judge then stated, "For the record State's Exhibit Number 35 has a very unpleasant odor[.]" Thereafter, a forensic DNA analyst who had examined the products of conception and blood samples of Defendant and the minor testified at trial that the probability of Defendant's paternity was 99.99 percent. Special Agent David Freeman, a forensic molecular geneticist with the State Bureau of Investigation, also testified at trial. He discussed DNA analysis conducted primarily by a colleague who was on vacation. Special Agent Freeman testified, *inter alia*, that the profile from the male fraction of the DNA taken from the minor's underwear was 4.48 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian population, 17.3 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's African-American population, 5.59 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian Lumbee Indian population, and 20.7 million trillion times more likely to be from Defendant than from another

**STATE v. WATTS**

[172 N.C. App. 58 (2005)]

unrelated individual within North Carolina's Hispanic population. Special Agent Freeman testified that, in his opinion, it was scientifically unlikely that the semen found on the minor's underwear originated from anyone other than Defendant.

From the resulting conviction of statutory rape of a thirteen-year-old victim and sentence, Defendant appealed to this Court.

---

[1] In his appeal, Defendant first contends that the trial court erred by denying his objection to Special Agent Freeman's testimony concerning his opinion about population statistics when he had not been tendered or qualified in that field. Defendant argued error as to Special Agent Freeman's statements that: (1) the profile from the male fraction of the DNA taken from the minor's underwear was 4.48 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian population; and (2) in his opinion, it was scientifically unlikely that the semen found on the minor's underwear originated from anyone other than Defendant.

Preliminarily, we point out that Defendant lodged only general objections during Special Agent Freeman's testimony and did not ask to be heard when the objections were overruled. Moreover, defense counsel questioned Special Agent Freeman at length about population statistics. The transcript does not clearly demonstrate the grounds for the objections, and the testimony was not on its face admissible for no purpose. Defendant therefore failed to preserve this issue for appeal. *State v. Tyler*, 346 N.C. 187, 203, 485 S.E.2d 599, 608 ("An objection to a witness's qualifications as an expert in a given field or upon a particular subject is waived if it is not made [] upon this special ground, and a mere general objection to the content of the witness's testimony will not ordinarily suffice to preserve the matter for subsequent appellate review." (quotation omitted)), *cert. denied*, 522 U.S. 1001, 139 L. Ed. 2d 411 (1997); *State v. Perkins*, 154 N.C. App. 148, 152-53, 571 S.E.2d 645, 648 (2002) (where "Defendant's counsel gave no basis for the [general] objections and the transcript does not clearly demonstrate grounds for the objections[,]" the issue was not preserved for appeal except for plain error review (quotations and citations omitted)); *State v. Hamilton*, 77 N.C. App. 506, 509, 335 S.E.2d 506, 508 (1985), *disc. review denied*, 315 N.C. 593, 341 S.E.2d 33 (1986) ("We note [] that a general objection, if overruled, is ordinarily not effective on appeal." (citation omitted)).

Because Defendant failed to preserve the issue of Special Agent Freeman's qualifications, the proper standard for review is plain error. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"); *Perkins*, 154 N.C. App. at 152-53, 571 S.E.2d at 648. Defendant failed, however, to assert plain error in both his assignments of error and his appellate brief. Where a defendant fails specifically and distinctly to allege plain error, the defendant waives his right to have the issues reviewed for plain error and we therefore refrain from any review. *State v. Forrest*, 164 N.C. App. 272, 277, 596 S.E.2d 22, 25-26 (2004) ("when a defendant fails to specifically and distinctly allege that the trial court's ruling amounts to plain error, defendant waives his right to have the issues reviewed under plain error[]" (citing *State v. Hamilton*, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994)); *State v. Flippen*, 349 N.C. 264, 274-75, 506 S.E.2d 702, 710 (1998), *cert. denied*, 526 U.S. 1135, 143 L. Ed. 2d 1015 (1999) (where defendant failed to assert plain error in his assignments of error, he waived plain error review).

Nonetheless, in the interest of justice and fairness of the judicial process, and given the considerable gravity of Defendant's lengthy sentence to imprisonment, we invoke our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure to review the merits of this assignment of error. N.C. R. App. P. 2 ("To prevent manifest injustice to a party . . . either court of the appellate division may . . . suspend or vary the requirements or provisions of any of these rules in a case pending before it . . . ."); *State v. Poplin*, 304 N.C. 185, 282 S.E.2d 420 (1981) (granting review under Rule 2 where the defendant made no arguments and cited no authority in his brief because of the severity of the sentence of life imprisonment); *but see State v. Dennison*, 359 N.C. 312, 608 S.E.2d 756 (2005) (declining to review under Rule 2 where the defendant failed to renew his objection to the admission of evidence after denial of a pretrial motion *in limine*, notwithstanding the defendant's sentence to life imprisonment without parole and moving to strike the evidence at trial and the Court of Appeals' granting a new trial based on admission of improper character evidence at the defendant's trial). Upon our review, we hold that Defendant's contention is without merit.

Defendant contends that Special Agent Freeman, who was qualified as an expert in forensic DNA analysis, was not qualified to testify as to population statistics and argues error as to Special Agent

Freeman's statements that: (1) the profile from the male fraction of the DNA taken from the minor's underwear was 4.48 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian population; and (2) in his opinion, it was scientifically unlikely that the semen found on the minor's underwear originated from anyone other than Defendant.

In *Futrell*, 112 N.C. App. at 659, 436 S.E.2d at 888, this Court provided a review of "the process of DNA analysis[]" and found that a population-statistical analysis is the third part of DNA analysis. This Court outlined the steps of DNA analysis as:

> First, the "known" and "unknown" samples of DNA molecules are chemically cut into fragments, separated into single strands, and lined up longest to shortest. A "probing step" follows to isolate those portions of DNA molecules which are "variable," that is, differ from one individual to another. Four specific areas of the DNA molecule are usually "probed" in the RFLP procedure. Then a process called autoradiography yields an exposed film called an "autorad" showing a pattern of fuzzy lines or bands, commonly referred to as a "DNA profile."

> Bands derived from the known and unknown samples are thereafter compared visually. If the numbers and positions of the bands on the autorad appear consistent with one another (*i.e.—* "line up"), they are then sized by computerized measurement with reference to "size markers" or "sizing ladders" which also appear on autorads in three parallel lanes. After visual examination and computerized measurement, an "interpretation" is made as to whether, within a specified deviation or "match window," a "match" may be declared. Under the F.B.I. protocol, a margin of error of plus or minus 2.5% is permitted.

> *Finally, the statistical significance of the "match," that is, the probability of finding identical strands of DNA in someone other than the accused, is determined. This is accomplished by ascertaining the frequency with which a particular pattern of bands will appear within a relevant population*, this latter being initially established by the race of the individual involved and by references to the pertinent data base compiled by the testing agency.

*Id.* at 660, 436 S.E.2d at 888 (emphasis added). In *Futrell*, a special agent assigned to the DNA Analysis Unit of the Federal Bureau of

Investigation laboratory testified as an expert in forensic DNA analysis. The special agent, *inter alia*, "compared DNA from defendant's blood sample and the semen to the F.B.I.'s black population data base and concluded the probability of finding a random match of the DNA in the semen and in defendant's blood was approximately 1 in 2.7 million individuals." *Id.* at 656, 436 S.E.2d at 886.

Similarly, in *State v. McKenzie*, 122 N.C. App. 37, 468 S.E.2d 817 (1996), an agent tendered as an expert in forensic DNA analysis testified, *inter alia*, "regarding the statistical analysis concerning the predicted population frequency of the DNA profiles in this case." *Id.* at 44, 468 S.E.2d at 823. While the defendant in *McKenzie* did not argue the agent's lack of qualification to address population statistics, this Court found that "[b]ased on [the agent's] training and experience, his testimony . . . provided a proper basis on which to accept this scientific evidence." *Id.* In a further example, *State v. Hill*, 116 N.C. App. 573, 449 S.E.2d 573, *disc. review denied*, 338 N.C. 670, 453 S.E.2d 183 (1994), an expert in molecular genetics and forensic DNA analysis testified as to population statistics, stating "that the probability of selecting another unrelated individual having the same DNA profile as defendant was approximately 1 in 2.6 million for the North Carolina white population." *Id.* at 578, 449 S.E.2d at 576. While the defendant in *Hill* did not object on the basis of the agent's qualifications, his other objections as to the agent's testimony were found to have no merit.

Here, Defendant does not dispute that Special Agent Freeman was properly tendered as an expert in the field of forensic DNA analysis. Indeed, the trial court established that Special Agent Freeman had a bachelor's degree in biochemistry, a master's and Ph.D. in microbiology, had undergone additional forensic DNA training through the North Carolina Bureau of Investigation, the Federal Bureau of Investigation, and the Armed Forces, and had conducted DNA analysis in over 400 cases.

Defendant asserts that "there are three separate areas of expertise associated with DNA testimony. Those three are forensic serology, forensic DNA analysis, and population statistics[,]" and that, because Special Agent Freeman was qualified only as a DNA analyst, "he can testify about electrophoresis and performing a polymerase chain reaction" but not about population statistics. Significantly, Defendant cites no authority in support of these contentions (in violation of Rule of Appellate Procedure 28(b)(6)). Given that this Court has found that a population-statistical analysis is the third step in

DNA analysis, our case law evidences the admissibility of testimony on population statistics by (forensic) DNA analysis experts, and Defendant cites no authority in support of his argument, we uphold the trial court's ruling that Special Agent Freeman, who was qualified as an expert in DNA analysis, was qualified to testify as to the population statistics in this case.

[2] Defendant next contends that the trial court erred by denying his objection to Special Agent Freeman's testimony about results of a DNA analysis conducted by an absent colleague. The record reflects that the DNA analysis, indicating that the male DNA found in the minor's underwear matched that of the Defendant, was initially conducted by Special Agent Freeman's colleague and was then reviewed by Special Agent Freeman, the leader of the State Bureau of Investigation's molecular genetics section. Defendant alleges that Special Agent Freeman testified as to his absent colleague's "lab conclusion" and thereby violated Defendant's Sixth Amendment right to confrontation, particularly in light of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004).[2]

Defendant lodged only a general objection during the relevant testimony and did not ask to be heard when the objection was overruled. The transcript does not clearly demonstrate the grounds for the objection, and the evidence was not on its face admissible for no purpose. Defendant thus failed to preserve this issue for appeal. *State v. Golphin*, 352 N.C. 364, 403-04, 533 S.E.2d 168, 197 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001) ("[T]his Court is not required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court." (quotations and citations omitted)); *Perkins*, 154 N.C. App. at 152-53, 571 S.E.2d at 648 (where defendant gave no basis for the objections and the transcript did not clearly demonstrate the grounds, the issue was not preserved for appeal). Moreover, Defendant failed specifically and distinctly to allege plain error in his assignment of error and appellate brief. Because Defendant failed specifically and distinctly to allege plain error, he waived his right to

---

2. In his appellate brief, Defendant also argued that admission of this testimony violated the rules of evidence. However, because Defendant's relevant assignment of error excepted only on the basis of the Confrontation Clause, we do not address the Rules of Evidence. N.C. R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"); *Dep't of Transp. v. Elm Land Co.*, 163 N.C. App. 257, 264, 593 S.E.2d 131, 136 (2004) (quoting N.C. R. App. P. 10(a) and refraining from addressing an argument regarding a conclusion of law where the assignment of error in the record excepted to the conclusion under a different theory).

have the issues reviewed for plain error. *Forrest*, 164 N.C. App. at 277, 596 S.E.2d at 25-26; *Flippen*, 349 N.C. at 274-75, 506 S.E.2d at 710. Again however, for the reasons previously stated, we exercise our discretion under Appellate Procedure Rule 2 to reach the merits of Defendant's argument on this issue.

In *State v. Delaney*, 171 N.C. App. 141, 613 S.E.2d 699 (2005), this Court determined that a defendant's right to confrontation was not violated where an expert in analyzing controlled substances relied on a non-present chemist's analyses in forming his expert opinion and testified regarding those analyses. This Court stated:

> Since it is well established that an expert may base an opinion on tests performed by others in the field and Defendant was given an opportunity to cross-examine [the expert] on the basis of his opinion, we conclude that there has been no violation of Defendant's right of confrontation under the rationale of *Crawford*.

*Id.* at 144, 613 S.E.2d at 701. And in another recent case, *State v. Walker*, 170 N.C. App. 632, 613 S.E.2d 330 (2005), this court found that the testimony of an expert as to a forensic firearms report conducted by another and admission of such report did not violate a defendant's right to confrontation and stated "where the evidence is admitted for, *inter alia*, corroboration or the basis of an expert's opinion, there is no constitutional infirmity." *Id.* at 635, 613 S.E.2d at 333 (citations omitted).

For the reasons stated in *Delaney* and *Walker*, Special Agent Freeman's using results of a DNA analysis conducted by a colleague to form the basis of his expert opinion and related testimony about that analysis did not violate Defendant's right of confrontation.

**[3]** Third, Defendant contends that the introduction of foul-smelling products of conception violated Defendant's due process rights under the Fourteenth Amendment of the United States Constitution.[3] Prior

---

3. We note that (1) Defendant also argues that the products of conception were "irrelevant to any issue," and (2) the trial court allowed testimony, particularly that of Officer William Davis, about the products of conception before the admission of the products themselves during the testimony of Dr. Kohn, the physician who performed the evacuation of the products. Because Defendant's assignments of error fail to raise the issue of relevancy and fail to except to that other testimony, we refrain from addressing those issues. N.C. R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"); *Elm Land Co.*, 163 N.C. App. at 264, 593 S.E.2d at 136 (quoting N.C. R. App. P. 10(a) and refraining from addressing an argument regarding a conclusion of law where the

to trial, Defendant made a motion *in limine* to prevent any mention of the products during trial, contending that the evidence was "solely for the purpose of prejudicing the defendant and placing his character in issue." The motion was "insufficient to preserve for appeal the question of admissibility of evidence." *State v. Hill*, 347 N.C. 275, 293, 493 S.E.2d 264, 274 (1997) (quotation omitted), *cert. denied*, 523 U.S. 1142, 140 L. Ed. 2d 1099 (1998); *T&T Dev. Co. v. S. Nat'l Bank of S.C.*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 348-49, *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997) (same).[4] At trial, Defendant lodged only a general line objection to Dr. Kohn's testimony about the products of conception, did not ask to be heard when the objection was overruled, and failed to indicate that the grounds for the desired exclusion was offensiveness that would violate Defendant's due process rights. The transcript does not clearly demonstrate the grounds for the objection, and the evidence was not on its face admissible for no purpose. Moreover, when the actual products themselves were entered into evidence, Defendant lodged no further objections. Furthermore, in his assignments of error and appellate brief, Defendant did not specifically allege plain error. This issue is therefore not preserved even for plain error review. *Golphin*, 352 N.C. at 403-04, 533 S.E.2d at 197; *Perkins*, 154 N.C. App. at 152-53, 571 S.E.2d at 648; *Forrest*, 164 N.C. App. at 277, 596 S.E.2d at 25-26; *Flippen*, 349 N.C. at 274-75, 506 S.E.2d at 710.

However, Defendant contends that "the failure of defense counsel to stipulate to the chain of custody of the products of conception to avoid the necessity of introducing them into evidence constituted ineffective assistance of counsel[.]" [R. p. 21] Because Defendant "has raised the specter of ineffective assistance of counsel . . . we consider the possible existence of prejudice." *State v. Roache*, 358 N.C. 243, 275, 595 S.E.2d 381, 403 (2004).

---

assignment of error in the record excepted to the conclusion under a different theory); N.C. R. App. P. 10(c)(1) (assignments of error shall include "clear and specific record or transcript references").

4. The General Assembly recently amended Rule 103(a) of the Rules of Evidence to provide that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2003). This amendment, however, applies only to rulings made on or after 1 October 2003 and thus does not apply in this case. *State v. Pullen*, 163 N.C. App. 696, 700-01, 594 S.E.2d 248, 251-52 (2004) (citing 2003 N.C. Sess. Laws ch. 101). Moreover, this Court recently held Rule 103 as amended unconstitutional in *State v. Tutt*, —— N.C. App. ——, —— S.E.2d —— (19 July 2005) (COA04-821).

An ineffective assistance of counsel claim is subject to a two-part analysis, where Defendant must show: (1) his "counsel's performance fell below an objective standard of reasonableness as defined by professional norms[,]" and (2) "the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error." *State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984); *State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985) (same)). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249.

After examining the record, we conclude that there is no reasonable probability that defense counsel's alleged error affected the outcome of Defendant's trial. Had defense counsel stipulated to the chain of custody of the products of conception, testimony regarding the results of the paternity would still have come in. A forensic DNA analyst who had examined the products of conception and blood samples of Defendant and the minor testified that the probability of Defendant's paternity was 99.99 percent. Special Agent Freeman testified that the profile from the male fraction of the DNA taken from the minor's underwear was 4.48 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian population, 17.3 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's African-American population, 5.59 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian Lumbee Indian population, and 20.7 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Hispanic population. Special Agent Freeman testified that, in his opinion, it was scientifically unlikely that the semen found on the minor's underwear originated from anyone other than Defendant. This evidence corroborated the minor's account of Defendant's criminal conduct. A stipulation to the chain of custody of the products of conception could not have negated the overwhelming evidence of Defendant's guilt. We therefore do not need to determine whether counsel's performance was actually deficient. *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249.

STATE v. WATTS

[172 N.C. App. 58 (2005)]

We nevertheless note that the admission of the leaking products, which were so malodorous that court needed to be recessed for the bailiff to spray the courtroom, is troublesome.

Our Supreme Court and this Court have found gruesome but relevant physical evidence to be admissible. For example, in *State v. Eason*, 328 N.C. 409, 402 S.E.2d 809 (1991), the defendant argued that the trial court erred by admitting into evidence a plastic cup containing the victim's left pinkie finger. *Id.* at 421, 402 S.E.2d at 814. Our Supreme Court stated that "relevant evidence will not be excluded simply because it may tend to prejudice the opponent or excite sympathy for the cause of the party who offers it as evidence." *Id.* Therefore, in *Eason*, where the victim's body was charred almost beyond recognition and the identity of the body was thus at issue, the finger, the print of which matched that of the victim, was relevant. And the Supreme Court held that the finger's "probative value as to the issue of the identity of the victim was not substantially outweighed by any danger of unfair prejudice." *Id.* at 421, 402 S.E.2d at 815. In *State v. Williams*, 17 N.C. App. 39, 43, 193 S.E.2d 452, 454 (1972), *cert. denied*, 282 N.C. 675, 194 S.E.2d 155 (1973), the defendant claimed that the admission into evidence of a tattooed segment of the deceased victim's skin was "unnecessarily gruesome and repulsive." This Court found no error, holding that the identity of the victim was at issue, and the tattooed skin segment was relevant and thus admissible. *Id.*

While there appears to be no precedent in North Carolina for the admission of products of conception into evidence, other courts have admitted such evidence. For example, in *People v. White*, 621 N.Y.S.2d 728 (1995), where the defendant was charged with statutory rape, the trial court admitted products of conception into evidence to prove chain of custody. *Id.* at 732. In *White*, the defendant asserted that "introduction into evidence of tissue from the remains of the victim's aborted fetus was reversible error because the exhibits were unnecessarily gruesome[.]" The *White* court held:

> Such evidence is admissible at the discretion of the trial court if relevant to an issue at trial (see, *People v Stevens*, 76 NY2d 833; *People v Pobliner*, 32 NY2d 356, *cert. denied*, 416 US 905). The fetal material was introduced to establish the chain of custody relating to the admissibility of the DNA evidence and was, thus, relevant. Any material not used for the DNA test was merely cumulative to that already admitted and was not designed to inflame the passions of the jury.

*Id.* In another case where a court admitted products of conception, *State v. Mucie,* 448 S.W.2d 879, 887, *cert. denied,* 398 U.S. 938, 26 L. Ed. 2d 271 (Mo. 1970), a "manslaughter by abortion" case, the defendant contended that the trial court erred in admitting uterus and fetal materials into evidence, alleging that their admission "served only to inflame the jury." *Id.* at 887. The Supreme Court of Missouri disagreed and found the materials went to, *inter alia,* pregnancy and cause of death. Moreover, the court noted that the materials "were preserved in clear glass bottles in the manner of laboratory specimens[]"—a manner of presentation likely to minimize leakage and smell. *Id.*

Here, in contrast to the sterile manner in which the *Mucie* materials were admitted, the trial court admitted into evidence a leaking bag of products of conception, including fetal material. The materials were so malodorous that court had to be recessed in order for the bailiff to spray the courtroom, and the trial judge stated "[f]or the record State's Exhibit Number 35 has a very unpleasant odor[.]" The products of conception were relevant as to Defendant's being the perpetrator of the statutory rape, particularly in light of his denying having had any sexual contact with the minor and not stipulating as to the products' chain of custody. However, notwithstanding the inflammatory manner in which the products were admitted, were the issue preserved for review and assuming the admission amounted to error, we would find no prejudicial error given the overwhelming evidence of Defendant's guilt. *See State v. Mann,* 355 N.C. 294, 306, 560 S.E.2d 776, 784 ("[T]o establish prejudice, defendant must persuade this Court that had the trial court not admitted the [evidence], a different outcome likely would have been reached. Given the overwhelming evidence of defendant's guilt, we are not so persuaded." (citation omitted)), *cert. denied,* 537 U.S. 1005, 154 L. Ed. 2d 403 (2002); *Hill,* 116 N.C. App. at 580, 449 S.E.2d at 577 ("Even if this Court found error in the trial court's admission of [photograph and physical evidence], defendant has failed to present evidence of prejudice . . . considering the overwhelming evidence presented against him.").

[4] Fourth, Defendant contends the trial court erred by imposing a sentence grossly disproportionate to the crime. This Court has previously held that the penalty set by our legislature for statutory rape is not disproportionate to the crime.

The General Assembly established a statutory scheme to protect young females from older males. Section 14-27.7A defines two

offenses in subsections (a) and (b), with a greater penalty corresponding to a greater age differential between the parties. Where the female is even younger, section 14-27.2 provides a penalty yet more severe than that found in section 14-27.7A. This statutory scheme, calibrating sentence severity to the gravity of the offense, reflects a rational legislative policy and is not disproportionate to the crime. See *State v. Green*, 348 N.C. 588, 609, 502 S.E.2d 819, 829 (1998), cert. denied, —— U.S. ——, 142 L. Ed. 2d 783 (1999). This sentencing scheme does not violate the North Carolina Constitution.

*State v. Anthony*, 133 N.C. App. 573, 578, 516 S.E.2d 195, 198 (1999), *aff'd*, 351 N.C. 611, 528 S.E.2d 321 (2000); *see also State v. Clark*, 161 N.C. App. 316, 319, 588 S.E.2d 66, 67 (2003) (although statutory rape carries "very severe punishment . . . , this is an issue for the legislature and not the courts. Furthermore, this Court has previously held that the sentencing scheme . . . reflects a rational legislative policy and is not disproportionate to the crime and is therefore constitutional." (quotation omitted)), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 81 (2004). Defendant has not even attempted to explain why this rationale would change under the Eighth Amendment of the United States Constitution. This assignment of error is overruled.

[5] Finally, in a motion for appropriate relief, Defendant contends that the trial court erred in finding an aggravating factor and sentencing him within the aggravated range in violation of his Sixth Amendment right to a jury trial. *See Blakely*, 542 U.S. 296, 159 L. Ed. 2d 403. The trial court found the aggravating factor that Defendant committed the offense while on pretrial release on another charge.

Our Supreme Court has recently held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *Allen*, 359 N.C. at 437, —— S.E.2d at ——; *see Speight*, 359 N.C. at 606, —— S.E.2d at ——. Therefore "those portions of N.C.G.S. § 15A-1340.16 (a), (b), and (c) which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence violate the Sixth Amendment to the United States Constitution." *Allen*,

359 N.C. at 438-39, —— S.E.2d at ——. Accordingly, our Supreme Court concluded that *"Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se." Allen*, 359 N.C. at 444, —— S.E.2d at ——.

As the aggravating factor here was not a prior conviction, the factor was not admitted by Defendant, and the facts for this aggravating factor were not presented to a jury and proved beyond a reasonable doubt, pursuant to *Allen* and *Speight* we must remand for resentencing.

For the foregoing reasons, we affirm Defendant's conviction but remand for resentencing.

No Error in part, Remand for resentencing in part.

Judges HUDSON and STEELMAN concur.