IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-297

No. COA21-99

Filed 3 May 2022

Gaston County, No. 17 CRS 63798

STATE OF NORTH CAROLINA,

v.

MARQUIS JULIUS GRAHAM, Defendant.

Appeal by Defendant from judgment entered 19 February 2020 by Judge David A. Phillips in Gaston County Superior Court. Heard in the Court of Appeals 12 January 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General John P. Barkley, for the State.*

*Dylan J.C. Buffum for Defendant.*

GRIFFIN, Judge.

Defendant Marquis Julius Graham appeals from a judgment entered upon a jury's verdict finding him guilty of first-degree murder. Defendant argues that the trial court erred by (1) instructing the jury that there was sufficient evidence to infer that Defendant intentionally injured the victim; (2) allowing the State to examine Defendant about privileged communications between Defendant and his counsel; and (3) denying Defendant's motion to compel the State to disclose the theory upon which

it sought to convict Defendant of first-degree murder. After review, we conclude that Defendant received a fair trial, free from prejudicial error.

## I.  Factual and Procedural Background

¶ 2      Defendant lived with his girlfriend, Ayanha Barnett, and her two sons at the time of the alleged murder. On the morning of 5 November 2017, Defendant woke up and travelled to a convenience store before returning home to smoke a cigar outside. Defendant returned to bed to lie down after he finished smoking. Meanwhile, Ms. Barnett was preparing to leave for an appointment in Charlotte. After Ms. Barnett informed Defendant that she was leaving for her appointment, Defendant walked her to the door before returning to bed and falling asleep. Ms. Barnett testified that at the time she left for her appointment, the two children were still asleep in their room.

¶ 3      Defendant testified that he slept for approximately two more hours after Ms. Barnett left for her appointment. After he woke up, Defendant watched some television before one of Ms. Barnett's sons, Cayden, asked Defendant to make him breakfast. Defendant prepared cereal for Cayden. After Cayden finished his breakfast, he returned to his room before telling Defendant that his brother, Kye, would not wake up to play with him. Defendant testified that he then entered the boys' bedroom and found Kye lying on the bed "pale in his face." Defendant stated that when he attempted to speak to Kye, Kye "did not respond," causing Defendant to "panic" and call Ms. Barnett.

¶ 4        Defendant called Ms. Barnett, and she advised Defendant to give Kye his medicine.  Defendant told Ms. Barnett that she needed to return home so that they could take Kye to the doctor.  When Ms. Barnett returned home, Defendant met her outside with Kye and Cayden, and they all travelled to the hospital together.  Kye remained unresponsive.

¶ 5        On 13 November 2017, a Gaston County grand jury returned a short form indictment charging Defendant with first-degree murder.  Prior to trial, Defendant filed a Motion to Compel, requesting that the court compel the State to disclose the theory by which it intended to convict Defendant of first-degree murder.  Defendant's motion was denied.

¶ 6        During the jury charge conference, the State announced that it sought to convict Defendant under both a theory of premeditation and deliberation and felony murder.  The trial court also instructed the jury that "[w]hen an adult has exclusive custody of a child for a period of time during which that child suffers injuries that are neither self-inflicted nor accidental, there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries."

¶ 7        On 19 February 2020, the jury found Defendant guilty of felony murder but not guilty of premeditated and deliberate murder.  Defendant provided oral notice of appeal in open court.

## II.    Analysis

¶ 8    Defendant argues that the trial court erred by (1) instructing the jury that there was sufficient evidence to infer that Defendant intentionally injured the victim; (2) allowing the State to examine Defendant about privileged communications between Defendant and his counsel; and (3) denying Defendant's motion to compel the State to disclose the theory upon which it sought to convict Defendant of first-degree murder.  We conclude that Defendant received a fair trial, free from prejudicial error.

## A.  Jury Instruction

¶ 9    Defendant argues that the trial court erred by instructing the jury that "[w]hen an adult has exclusive custody of a child for a period of time during which that child suffers injuries that are neither self-inflicted nor accidental, there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries." Defendant contends that this language impermissibly "created a 'mandatory presumption'" that Defendant intentionally injured Kye.  We disagree.

¶ 10    We review "the trial court's decisions regarding jury instructions" *de novo*. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).  "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation and internal quotation marks omitted).

[W]e review jury instructions contextually and in [their]

> entirety. The charge will be held to be sufficient if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Ballard*, 193 N.C. App. 551, 559–60, 668 S.E.2d 78, 83 (2008) (citations omitted).

> A presumption, or deductive device, is a legal mechanism that allows or requires the factfinder to assume the existence of a fact when proof of other facts is shown. The fact that must be proved is called the basic fact; the fact that may or must be assumed upon proof of the basic fact is the presumed fact. . . . If the words of instruction describe an inference which must be drawn upon proof of basic facts, then the presumption is mandatory in nature. Mandatory presumptions which conclusively prejudge the existence of an elemental issue or actually shift to [the] defendant the burden to disprove the existence of an elemental fact violate the Due Process Clause.

*State v. Reynolds*, 307 N.C. 184, 188–89, 297 S.E.2d 532, 535 (1982) (citations omitted).

¶ 11 If, "in the absence of further elaboration by the trial judge, a reasonable juror could have interpreted the instruction as either 'an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption' or 'a direction to find intent upon proof of the defendant's voluntary actions[,]'" then the instruction provides a mandatory presumption. *State v. White*, 300 N.C. 494, 506, 268 S.E.2d

481, 488–89 (1980) (citation omitted).

¶ 12        Here, the trial judge instructed the jury that "[w]hen an adult has exclusive custody of a child for a period of time during which that child suffers injuries that are neither self-inflicted nor accidental, there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries." However, this instruction must be viewed not in isolation, but "in light of the entire charge." *Ballard*, 193 N.C. App. at 559–60, 668 S.E.2d at 83 (citations omitted). The trial judge also instructed the jury that it was "the sole judge[] of the weight to be given to any evidence" and stated, "If you decide certain evidence is believable, you must determine the importance of that evidence in light of all other believable evidence."

¶ 13        The instruction was also provided in the greater context of the law regarding intent to inflict serious injury and the distinction between circumstantial and direct evidence. The court explained that "intent is a mental attitude that is seldom, if ever, provable by direct evidence." The trial judge then correctly instructed the jury that "[w]hen an adult has exclusive custody of a child for a period of time during which that child suffers injuries that are neither self-inflicted nor accidental, there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries." Indeed, this *is* sufficient evidence from which the jury could infer intent to inflict serious injury, as demonstrated by numerous cases regarding the sufficiency of the State's evidence employing this exact same language. *See, e.g., State v.*

*Liberato*, 156 N.C. App. 182, 186, 576 S.E.2d 118, 120–21 (2003) ("[W]hen an adult has exclusive custody of a child for a period of time during which the child suffers injuries that are neither self-inflicted nor accidental, *there is sufficient evidence to create an inference that the adult intentionally inflicted those injuries*." (emphasis added) (citations omitted)); *State v. Perry*, 229 N.C. App. 304, 319, 750 S.E.2d 521, 532–33 (2013) (citations omitted).

¶ 14    Lastly, the phrase "sufficient to create an inference" cannot reasonably be interpreted as meaning that the basic facts, if proven, "*necessarily* create an inference" of intent.  Defendant has provided no basis to conclude that the lay members of the jury did not understand the meaning of the word "sufficient" as it is commonly understood.  Viewing the jury instruction "contextually and in its entirety[,]" we hold that the instruction provides "no reasonable cause to believe the jury was misled or misinformed" by the instruction. *Ballard*, 193 N.C. App. at 559–60, 668 S.E.2d at 83 (citations omitted).

## B. Privileged Communications

¶ 15    Defendant next argues that the trial court erred "when it allowed the State to examine [Defendant] about privileged communications with counsel."  Although the trial court erred by allowing questions probing the substance of Defendant's communications with counsel, we hold that Defendant has not shown prejudice sufficient to warrant a new trial.

¶ 16          The following colloquy occurred during the State's cross-examination of

Defendant at trial:

> Q: Mr. Graham, the last thing you and [your attorney] were covering or talking about [during direct examination] was your interview . . . at Gaston County Police Department, correct?
>
> A: Yes, ma'am.
>
> Q: You told [your attorney during direct examination] that interview that you gave the police was not accurate, not truthful, correct?
>
> A: Yes, ma'am.
>
> Q: But everything you told the jury here today is, in fact, accurate, and in fact, the truth?
>
> A: Yes, ma'am.
>
> Q: So that has been a little over two years ago, correct?
>
> A: Yes, ma'am.
>
> Q: And have you at any point told anybody the version of what you told the jury here today in those two years?
>
> A: Not the full version, no.  I was told not to talk about my case.
>
> Q: So you didn't think it was important to tell . . . your attorney[] what you told—
>
> A: I—

Q: Let me finish asking the question. You didn't think it was important to tell . . . your attorney[] what you testified to here today?

A: I told him things.

Q: Did you tell him everything you testified about today?

　　[DEFENSE COUNSEL]: Objection.

　　THE COURT: Overruled.

Q: You told him some of this information?

A: We talked about my case. I told him many things we talked about today.

Q: At any point, did you talk to him about calling Detective Sampson or any of the other law enforcement officers involved in this case and tell him, hey, I have got to clean my story up. I have to tell them the truth in that two-and-a-half years?

A: No, ma'am.

. . .

Q: Back to what I was asking you earlier. You never asked your attorney or talked to anybody since [two years earlier] about telling them what you're now saying is the truth?

A: No, ma'am.

. . .

Q: So you waited until today to tell this version, right?

A: Yes, ma'am.

¶ 17        First, the State argues that Defendant failed to preserve his argument for appellate review because, although he initially objected to the State's question regarding the substance of communications with counsel, Defendant failed to renew his objection when the State asked subsequent questions probing communications with counsel. We disagree.

¶ 18        N.C. Gen. Stat. § 15A-1446(d)(10) provides in pertinent part:

> (d) Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division.
>
> . . .
>
> (10) Subsequent admission of evidence involving a specified line of questioning when there has been an improperly overruled objection to the admission of evidence involving that line of questioning.

N.C. Gen. Stat. § 15A-1446(d)(10) (2019); *see also State v. Corbett*, 376 N.C. 799, 2021-NCSC-18, ¶ 55 ("Pursuant to N.C.G.S. § 15A-1446(d)(10), notwithstanding a party's failure to object to the admission of evidence at some point at trial, a party may challenge '[s]ubsequent admission of evidence involving a specified line of questioning when there has been an improperly overruled objection to the admission of evidence involving that line of questioning.'").

¶ 19        Defendant did object to the State's initial question regarding the substance of Defendant's communications with counsel. Accordingly, any further questions

regarding the substance of those communications is preserved as a matter of law if the objection was erroneously overruled. Because we conclude that Defendant's objection was improperly overruled, Defendant's argument is properly before this Court.

¶ 20    "The long-established rule is that when the relation of attorney and client exists all confidential communications made by the latter to his attorney on faith of such relation are privileged[.]" *State v. Van Landingham*, 283 N.C. 589, 601, 197 S.E.2d 539, 547 (1973) (citations omitted). However, "not all communications between an attorney and a client are privileged." *In re Miller*, 357 N.C. 316, 335, 584 S.E.2d 772, 786 (2003) (citations omitted). Rather, the party arguing that communications are privileged bears the burden of proving the following five elements:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*Id.* at 335, 584 S.E.2d at 786 (citations omitted).

¶ 21    In this case, the State asked Defendant, "Did you tell [your attorney] everything you testified about today?" Defendant's counsel objected to the question,

which was overruled. The State then continued to ask questions probing the substance of Defendant's communications with counsel. Because the questions were pertinent to the substance of Defendant's communications with his attorney about his case, the communications were privileged and should not have been permitted. The State does not argue on appeal that the communications were not privileged. Nonetheless, the trial court's error was not so prejudicial as to entitle Defendant to a new trial.

¶ 22     "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2019).

¶ 23     Here, the purpose of the State's line of questioning was to impeach the credibility of Defendant:

> Q: You told [your attorney during direct examination] that interview that you gave the police was not accurate, not truthful, correct?
>
> A: Yes, ma'am.
>
> Q: But everything you told the jury here today is, in fact, accurate, and in fact, the truth?
>
> A: Yes, ma'am.
>
> Q: So that has been a little over two years ago, correct?
>
> A: Yes, ma'am.

Q: And have you at any point told anybody the version of
what you told the jury here today in those two years?

A: Not the full version, no. I was told not to talk about my
case.

Q: So you didn't think it was important to tell . . . your
attorney[] what you told—

A: I—

Q: Let me finish asking the question.  You didn't think it
was important to tell . . . your attorney[] what you testified
to here today?

A: I told him things.

Q: Did you tell him everything you testified about today?

    [DEFENSE COUNSEL]: Objection.

    THE COURT: Overruled.

Q: You told him some of this information?

A: We talked about my case.  I told him many things we
talked about today.

¶ 24     In light of the foregoing colloquy and the other evidence admitted at trial, we
cannot discern how Defendant could have been prejudiced by the State's questions
regarding privileged communications.  Prior to cross examination, Defendant had
already admitted that he lied to the police about what happened on the morning that
Kye passed away.  Defendant's credibility was therefore already at issue due to
Defendant's own admission of being untruthful with police in the past.  Moreover,

prior to Defendant's objections to the State's line of questioning, the State asked Defendant, "You didn't think it was important to tell . . . your attorney[] what you testified to here today?" Defendant replied, "I told him things." This was after Defendant had already testified that he had not told anyone about his case in the roughly two-year period between speaking with the police and trial.

¶ 25 We hold that Defendant has not established prejudice sufficient to warrant a new trial.

**C. Motion to Compel**

¶ 26 Defendant argues that the trial court erred by denying his Motion to Compel the State to disclose the theory upon which it sought to convict Defendant of first-degree murder. It is well-established that "when first-degree murder is charged, the State is not required to elect between theories of prosecution prior to trial." *State v. Garcia*, 358 N.C. 382, 389, 597 S.E.2d 724, 732 (2004) (citation omitted); *State v. Strickland*, 307 N.C. 274, 292, 298 S.E.2d 645, 657 (1983) ("[T]he State is not required, prior to trial, to declare whether it will prosecute a first degree murder indictment under a theory of premeditation and deliberation or felony murder."), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 203–04, 344 S.E.2d 775, 781–82 (1986); *State v. Hicks*, 241 N.C. App. 345, 349, 772 S.E.2d 486, 489–90 (2015) ("When the State's indictment language sufficiently charges a defendant with first degree murder, it 'is not required to elect between theories of

prosecution prior to trial.' Rather, 'a defendant must be prepared to defend against any and all legal theories which the facts may support.'" (quoting *Garcia*, 358 N.C. at 389, 597 S.E.2d at 732)).

Defendant states in his brief that he "presents the [instant] argument for the purposes of preservation" only. Defendant's argument is without merit.

## III.    Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges MURPHY and COLLINS concur.